**FBS BUSINESS FINANCE CORPORATION,**
Respondent,

v.

**EDISON FINANCIAL GROUP, INC., et al., Appellants.**

No. C3–90–1936.

Court of Appeals of Minnesota.

Dec. 24, 1990.

Jeffrey R. Ansel, E. Joseph Newton, Winthrop & Weinstine, St. Paul, for respondent.

Gregory L. Wilmes, Briol & Wilmes, Minneapolis, for appellants.

Considered and decided by SCHUMACHER, P.J., and PARKER and NIERENGARTEN *, JJ.

## OPINION

WM. J. NIERENGARTEN, Judge.

Appellants Edison Financial Group (EFG) and Michael J. Edison (Edison) challenge the granting of summary judgment against them, claiming the trial court erred in refusing to apply article 9 of the Uniform Commercial Code, on secured transactions, to a lease. Minn.Stat. §§ 336.9–101 to 508 (1988). We reverse and remand to the trial court.

## FACTS

On December 17, 1987, EFG leased office furniture from respondent FBS Business Finance Corporation pursuant to a master lease agreement. EFG president Edison personally guaranteed the lease in a separate agreement. The parties agreed that the master lease would govern a series of furniture shipments. From December 1987 to March 1988, FBS made three separate furniture deliveries. With each delivery, the parties entered "supplemental schedules" that outlined the payment schedule and other rental terms. Each supplemental schedule stated: "FBS Business Finance Corporation does not construe this transaction to be a true lease." The par-

---

* Wm. J. Nierengarten, acting as judge of the Court of Appeals by appointment pursuant to

Minn. Const. art. VI, § 2.

ties also entered purchase agreements as a part of the master lease in which EFG agreed to buy the equipment upon the expiration of the lease term.

EFG defaulted on the lease. FBS sued for breach of contract. EFG returned some equipment over a period of time. FBS resold part of the repossessed equipment for approximately $49,000. In March 1990, and based on the parties' prior stipulation, the trial court ordered EFG to return the remaining equipment in its possession.

The trial court granted summary judgment to FBS for breach of contract. The trial court found that the unambiguous language of the contract allowed FBS to recover both the equipment and liquidated damages. The trial court refused to apply article 9, and refused to order an accounting because the lease specifically waived an accounting. Finally, the trial court held that under the lease provisions, FBS acted in a commercially reasonable manner in disposing of the equipment.

### ISSUE

Is the lease an article 9 security agreement?

### ANALYSIS

On appeal from summary judgment, this court reviews the record to determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989). EFG and Edison argue the trial court erred in granting summary judgment on FBS' breach of contract claims because the "lease" is actually an article 9 security agreement.

Article 9 applies to security interests created by contract, including a lease or consignment that is intended as security. Minn.Stat. § 336.9–102(2). To determine whether article 9 applied, the trial court had to decide whether the transaction was intended to have effect as security. U.C.C. § 9–102, 1972 official comment 1, *reprinted in* Minn.Stat.Ann. § 336.9–102 (West Supp.1990). The definition of a "security interest" states that

> [w]hether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.[1]

Minn.Stat. § 336.1–201(37) (1988). Minnesota courts have held lease agreements to be security agreements where the lessee has an option to buy leased equipment for nominal consideration. *See Chemlease Worldwide Inc. v. Brace, Inc.*, 338 N.W.2d 428, 432 (Minn.1983) (option to buy $20,000 equipment for $1); *James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis*, 292 Minn. 277, 283, 194 N.W.2d 775, 780 (1972) (option to buy $73,000 equipment for $2). We do not find the amount of consideration determinative here, however.

In their work on the U.C.C., White and Summers discuss the lease-security agreement question in some detail. According to them,

> [c]ourts consider the *lessor's status as a financier* to be relevant. So, too, such factors as *whether the lessee is required to insure the goods in favor of the lessor for a value equal to the total rental payments; the risk of loss or damage is on the lessee; the lessee is to pay for taxes, repairs and maintenance; there are default provisions governing acceleration and resale;* a substantial, nonrefundable deposit is required; the goods are to be selected from a third party by the lessee; the rental payments are equivalent to the cost of goods plus inter-

---

1. The legislature amended this section in 1989, adopting changes made in the official 1987 UCC text. The amendment, however, applies to lease contracts executed on or after January 1, 1990. 1989 Minn. Laws ch. 232, art. 2, § 3, and art. 3, § 1. Here, the lease was executed in 1987, thus the 1989 amendment is inapplicable.

est; the lessor lacks facilities to store or retake the goods; the lease is to be discounted with a bank; *warranties normally found in a lease are excluded;* the goods are fixtures impractical to remove. This list is not exhaustive. Nor is any one factor conclusive standing alone. Each transaction must be viewed on its facts, bearing in mind the Code's abhorrence of secret liens.

2 J. White & R. Summers, *Uniform Commercial Code* § 23–3, at 251–52 (3rd ed. 1988) (footnotes omitted) (emphasis added).

 The master lease purports to retain title and ownership of the equipment in FBS; however, the lease contains several factors which indicate a secret lien. The master lease requires EFG to insure the equipment for a stipulated loss value, naming FBS as a loss payee. EFG bears all risk of loss, theft, damage or destruction. Loss of the equipment does not relieve EFG of its obligation to pay rent. EFG is required to pay or reimburse FBS for all taxes, licensing or registration costs, and all maintenance expenses connected with the equipment. FBS disclaims all warranties, and assigns any manufacturer's warranties to EFG. FBS' remedies upon default include action under the UCC. We have also noted the statement of FBS that it "does not construe this transaction to be a true lease" and the existence of the purchase agreements as a part of the master lease as indicative of the parties' intent. Although the agreement bears the form and terminology of a lease, in substance it is a security agreement.

Since we have determined that article 9 applies to the lease, we next determine whether the security agreement is valid under Minn.Stat. § 336.9–203. A security interest is not enforceable nor does it attach unless (1) the debtor has signed a security agreement which describes the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. Minn.Stat. § 336.9–203(1)(a)–(c). Authorized officers of EFG signed the master lease, the supplemental schedules and the purchase agreements. Detailed lists describing the equipment are also a part of

the master lease. FBS gave value in the form of credit. Finally, EFG had rights in the equipment. We hold, as a matter of law, that the lease is a valid security agreement. Because we reverse the trial court on the article 9 issue, we decline to address the other arguments raised on appeal.

## DECISION

The trial court erred in granting summary judgment where the lease terms show that the lease was intended as a security agreement, subject to article 9. We remand to the trial court with instructions to apply article 9 to the lease. In so doing, the trial court should order FBS to account for proceeds received from the sale of the collateral, reducing any deficiency accordingly. Similarly, the trial court must address the commercial reasonableness of FBS' actions under the standards of article 9.

Reversed and remanded.