**CORPORATE FINANCERS, INC., a Minnesota corporation, d/b/a Corporate Financers Incorporated, as assignee of George Farr Investments, Inc., d/b/a George Farr Investments, and as assignee of National Trade Trust, appellant,**

v.

**VOYAGEUR TRADING COMPANY, a Minnesota corporation; et al., Fidelity Bank, a Minnesota corporation, respondents.**

No. C3–93–2552.

Court of Appeals of Minnesota.

July 19, 1994.

Review Denied Sept. 16, 1994.

---

1. Lindfors' alleged liability is less derivative than that of the insurer in *Jet*.

Richard S. Vinitsky, Charles E. Savitt, Ivor N.C. Jorgensen, Vinitsky Law Office, P.A., Minnetonka, for Corporate Financers, Inc.

Jill Waite, Waite, Ltd., Minneapolis, for Voyageur Trading Co.

Monica Lindstrom, Eric J. Lindstrom, Lindstrom Law Offices, Edina, for Fidelity Bank.

Considered and decided by SCHUMACHER, P.J., and HARTEN and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge*.

Corporate Financers, Inc. sued as assignee to enforce a security interest. A hearing was held on cross-motions for summary judgment, where the district court granted summary judgment against Corporate Financers and dismissed respondent Voyageur Trading Company. Corporate Financers appeals. We affirm in part and reverse in part.

## FACTS

Respondent Voyageur Trading Co. (Voyageur) is a distributor of wild rice and pasta. In July 1991, respondent Fidelity Bank (Fidelity) established a $30,000 line of credit for Voyageur secured by Voyageur's business assets. Fidelity filed a U.C.C.-1 financing statement on July 15, 1991, listing Voyageur as "Voyager Trading Co.," rather than Voyageur. On December 11, 1991, Fidelity filed a U.C.C.-3 amendment, correcting the name to "Voyageur Trading Co." By the end of December 1992, Voyageur completed payment of its debts to Fidelity Bank.

In the fall of 1991, Richard Sampson, president of Voyageur, contacted National Trade Trust (National Trade) regarding short-term business financing and met with National Trade's CEO, Frank Broghammer. In anticipation of an agreement, Broghammer and Sampson prefiled a U.C.C.-1 financing statement in favor of National Trade.

As National Trade, however, was unable to secure funds to provide financing to Voyageur, Broghammer contacted George Farr of George Farr Investments (GFI). In November 1991, GFI agreed to advance funds to Voyageur and National Trade agreed to service the account. On November 8, 1991, National Trade assigned the financing statement to GFI. On November 9, 1991, Sampson signed a security agreement and promissory note which provided an interest rate of 54%. Written in the contract margin was the notation, "2d RCS," which allegedly indicated that the agreement was second to the Fidelity loan. On November 11, 1991, pursuant to the promissory note and security agreement, GFI advanced $88,000 to Voyageur. GFI filed the assignment from National Trade on November 15, 1991. Voyageur repaid the loan on December 17, 1991, and GFI paid National Trade for servicing the loan.

George Farr incorporated appellant Corporate Financers, Inc. in December 1991 to handle short-term financing. In January 1992, GFI transferred the Voyageur account to Corporate Financers. Corporate Financers made additional loans to Voyageur under the National Trade agreement aggregating $70,000. Voyageur made its last payment on these loans on June 8, 1992.

In September 1992, Voyageur sold certain marketing assets to Wild Rice Exchange, Inc. (Rice Exchange) and changed its name to Voyageur Trading Division of the Wild Rice Exchange. Corporate Financers attempted to contact agents of Rice Exchange for payment of the outstanding debt and to determine if assets pledged by Voyageur to Corporate Financers had been transferred to Rice Exchange. Corporate Financers was told that Voyageur had no money left to pay Corporate Financers. Corporate Financers alleges that, at that time, Rice Exchange was obligated to Voyageur for outstanding accounts receivable. As a secured creditor, Corporate Financers requested that Rice Exchange forward the amount owed to Corporate Financers.

Corporate Financers sued for breach of its loan agreement as the assignee of National Trade in November 1992. Parties brought cross-motions for summary judgment and dismissal, and the district court granted summary judgment for respondents Voyageur and Fidelity, holding the assignment of the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

financing statement from National Trade to GFI was invalid because National Trade was not a secured creditor, and further holding that Sampson was not individually liable because he signed the note as an individual and the note was usurious. The district court also dismissed Voyageur as a party because it was not named in any of the counts of Corporate Financers' complaint. Corporate Financers appeals only as to Voyageur, Rice Exchange, and Fidelity.

## ISSUES

I. Did the district court err by dismissing Voyageur and by granting summary judgment for Rice Exchange?

II. Did the district court err by granting summary judgment for Fidelity?

## ANALYSIS

On appeal from summary judgment, this court must determine (a) whether there are any genuine issues of material fact, and (b) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988); *Basich v. Board of Pensions of Evangelical Lutheran Church in Am.,* 493 N.W.2d 293, 295 (Minn.App.1992). We are not bound by and need not give deference to a district court's determination of purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

## I.

■ Pleadings serve to give fair notice to the adverse party of the incident giving rise to the claim and the theory upon which the claim for relief is based. *Basich,* 493 N.W.2d at 295 (citing *Northern States Power Co. v. Franklin,* 265 Minn. 391, 394, 122 N.W.2d 26, 29 (1963)). Courts should construe pleadings liberally by their substance, not their form, in favor of the pleader, to promote "substantial justice." Minn.R.Civ.P. 8.06; *Basich,* 493 N.W.2d at 295; *see also Mutual Creamery Ins. Co. v. Iowa Nat'l Mut. Ins. Co.,* 427 F.2d 504, 507–08 (8th Cir.1970).

■ The district court dismissed Voyageur, holding the complaint did not allege a claim against Voyageur. We disagree. The complaint sufficiently described circumstances giving rise to a claim against Voyageur and the theory upon which relief might be granted. Paragraph 27 of the complaint reads, in part, "The Plaintiff is entitled to judgment in the amount of $22,036.99." The mere fact that the sentence failed to state "judgment against Voyageur" does not make the complaint per se insufficient. The complaint named Voyageur as a defendant and described the execution of the promissory note by Voyageur. The complaint addressed the cash advancement from GFI to Voyageur, recounted the assignment of the prefiled U.C.C.–1 financing statement from National Trade to GFI, and alleged that Voyageur defaulted. Finally, the complaint requested judgment in the amount of $22,036.99, an amount that corresponded to the amount Corporate Financers alleged Voyageur owed. Had Corporate Financers realized the oversight in drafting the complaint before summary judgment, it likely would have amended the complaint to insert the words "against Voyageur." *See* Minn.R.Civ.P. 15.01 (when a complaint is inadequate, party may move to amend it). Nonetheless, reading the complaint broadly in favor of the pleader, Voyageur had fair notice of the cause of action, the incidents giving rise to the action, and the theory upon which relief might be granted. *See Basich,* 493 N.W.2d at 295.

In the alternative, Voyageur argues Corporate Financers' case should be dismissed because Corporate Financers had no capacity to sue as assignee of National Trade. Voyageur claims National Trade was not a secured creditor and, therefore, the assignment of the prefiled U.C.C.–1 financing statement was void rendering Corporate Financers with no legal rights as assignee of National Trade. We disagree.

A security interest is said to attach when it "becomes enforceable against the debtor with respect to the collateral." Minn.Stat. § 336.9–203(2) (1992). Attachment occurs when the following conditions are met: (1) the debtor has signed a security agreement describing the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. Minn.Stat. § 336.9–203(1), (2)

(1992). A secured party whose interest has attached may enforce this interest against the debtor or third parties with respect to the collateral. Minn.Stat. § 336.9–203(1).

■ Here, a security agreement was executed by Voyageur in favor of GFI in November 1991. The agreement was signed by Sampson as CEO for the debtor, Voyageur, and described the inventory and general intangibles as collateral. The agreement identified a promissory note given to GFI as value for the agreement, and described the agreement between GFI and Voyageur. An accompanying promissory note described the loan of $100,000 at an annual rate of 54%. This agreement caused GFI's security interest to Corporate Financers to attach pursuant to Minn.Stat. § 336.9–203(1).

■ GFI then attempted to perfect its interest by filing the assignment of National Trade's prefiled U.C.C.–1 statement. Generally, a security interest is perfected when it has attached and when the financing statement is filed. Minn.Stat. §§ 336.9–302(1), (3)(b)(i), .9–303(1) (1992). The filing of the financing statement serves as notice to the world that a secured party of record may have a secured interest in the collateral described and invites further inquiry to disclose the complete state of affairs. *Van Deist Supply Co. v. Adrian State Bank,* 305 N.W.2d 342, 347 (Minn.1981).

■ A financing statement may be filed before the security agreement is made or the interest otherwise attaches. Minn.Stat. § 336.9–402(1) (1992); *see also* Donald J. Rapson, *Prefiling U.C.C.–1s: The Proper Procedure for Perfecting Security Interests,* 14 U.C.C. L.J. 211, 212 (1982) (a financing statement may be filed before a security agreement is reached). Because the U.C.C. allows for the assignment of a perfected security interest, there is no reason to prevent the assignment of the instrument used to perfect a secured interest so long as the assignment does not change the date of perfection. *See* Minn.Stat. §§ 336.9–302(2) (if secured party assigns perfected security interest, further filing not required to continue perfected status), .9–405(2), (3) (secured party of record may file assignment of rights, following which assignee is secured party of record) (1992 & Supp.1993); *see also* Minn. Stat. § 336.9–318 (1992) (defenses against assignee). Either method provides notice, to the same extent and purpose, that a party of record has a secured interest in the collateral. There is no comparative advantage.

■ Perfection occurs when the security interest attaches and when all applicable steps required for perfection have been taken. Minn.Stat. § 336.9–303(1). On or about November 9, 1991, GFI's security interest attached as against Voyageur when GFI executed the security agreement with Voyageur. *See* Minn.Stat. § 336.9–203(1). On November 15, 1991, GFI filed a U.C.C.–3 statement of the assignment of National Trade's financing statement to GFI, which thereby perfected GFI's security interest. GFI then assigned its perfected security interest to Corporate Financers in January of 1992. Therefore, Corporate Financers' security interest was perfected on November 15, 1991.

The district court granted summary judgment for Rice Exchange and dismissed Voyageur without finding how the funds were distributed, and who now owes Corporate Financers under its security interest. We therefore reverse and remand the decision as to Voyageur and Rice Exchange.

## II.

Fidelity argues the district court appropriately granted summary judgment because Fidelity had a prior perfected security interest against Voyageur. Although Fidelity raises theories not presented before the district court, we grant review in the interests of justice. *See* Minn.R.Civ.App.P. 103.04 (appellate court may grant review in interests of justice); *Byrd v. O'Neill,* 309 Minn. 415, 417 n. 2, 244 N.W.2d 657, 658 n. 2 (1976) (court may review issue not raised in prior ruling where the issue is plainly decisive of the entire controversy and there is no possible advantage or disadvantage to either party in not having the trial court rule on the issue); *McMains v. Commissioner of Pub. Safety,* 409 N.W.2d 911, 913 (Minn.App.1987) (same).

■ Fidelity filed a U.C.C.–1 financing statement in July 1991 spelling Voyageur as

"Voyager" rather than "Voyageur." Under the doctrine of idem sonans, absolute accuracy in spelling names is not required in legal documents if the misspelled name sounds the same to the attentive ear as the properly spelled name. *See Fidelity Acceptance Co. v. House,* 210 Minn. 220, 220–21, 297 N.W. 705, 705 (1941) (recordation of sales contract under name "W.G. House" rather than "W.G. Hause" valid notice under doctrine of idem sonans); *State v. Provencher,* 129 Minn. 409, 412–13, 152 N.W. 775, 776 (1915) (notice valid under doctrine of idem sonans despite variance between notice and indictment in spelling "Boise" and "Boyce"). We believe the pronunciation of "Voyager" and "Voyageur" are virtually equivalent and are idem sonans. Therefore, Fidelity's July filing was valid and perfected Fidelity's security interest. Moreover, respondents have made no showing of prejudice because of this misspelling. As Corporate Financers' interest was perfected after Fidelity's interest, Corporate Financers has no claim against Fidelity. We therefore affirm the district court's grant of summary judgment for Fidelity.

Corporate Financers has filed a motion to strike portions of Fidelity's brief and appendix as containing matters outside the record. *See* Minn.R.Civ.App.P. 110.01. We have reviewed the documents and the record and deny the motion.

## DECISION

The complaint provided adequate notice of the claims against Voyageur and the assignment of National Trade's financing statement perfected Corporate Financers' secured interest. We therefore reverse and remand the decision regarding Rice Exchange and Voyageur to determine the location of funds owed to Corporate Financers. Because Fidelity was a prior perfected secured creditor, we affirm the district court's grant of summary judgment for Fidelity.

**Affirmed in part, reversed in part and remanded.**