In re Gary Lee IMMERFALL, Debtor.

Bankruptcy No. 97–33548.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Jan. 2, 1998.

Randall Smith, St. Paul, MN, for Debtor.

James Kirshbaum, Minneapolis, MN, for Sears.

ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM OF SEARS, ROEBUCK & COMPANY (CLAIM NO. 3)

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 13 case came on before the Court on September 24, 1997, for hearing on the Debtor's objection to the claim of Sears, Roebuck & Company ("Sears"), filed as Claim No. 3. The Debtor appeared by his attorney, Randall Smith, UAW–Ford Legal Services Plan. Sears appeared by its attorney, James J. Kirshbaum. Upon the objection, Sears's written response, and the arguments of counsel, the Court makes the following order.

## FINDINGS OF FACT

1. The Debtor filed a voluntary petition for debt adjustment under Chapter 13 on May 23, 1997.

2. On his Schedule F, "Creditors Holding Unsecured Nonpriority Claims," the Debtor included an entry for Sears. He described the consideration for the claim as "Credit Purchases," and stated the amount as $3,843.00.

3. In the plan that he filed on May 23, 1997, the Debtor proposed to pay a total of $8,892.00 to the Standing Trustee over a period of 36 months. The plan does not include any class for a secured claim. It provides for the full amount of the Debtor's payments, net of the Trustee's fee, to be

applied to a stated total of $43,847.00 in unsecured debt.

4. Sears timely filed an objection to confirmation. It alleged that it had asserted a claim in the total of $3,843.90, "of which $975.00 [was] a secured amount," by filing a proof of claim on June 26, 1998.[1] The text of Sears's objection did not precisely set forth its theory; apparently, Sears was maintaining that it was entitled to a separately-classified secured claim, in an amount equal to the stated "repossession value of [the Debtor's] secured purchases . . ."

5. At the July 31, 1997 hearing on confirmation of the Debtor's plan, counsel agreed that the Debtor's counsel would re-raise the issue of Sears's secured status by objecting to its filed claim.

6. On the face of its proof of claim, in the blank for "Brief Description of Collateral," Sears recites "PURCHASE MONEY SECURITY INTEREST." The proof of claim includes several attachments. These include a computer printout entitled "D1—account display," run off on a dot-matrix printer, which is apparently some sort of account history, and five photocopies of what appear to be charge slips issued on a retail revolving credit card account. Each one of these slips includes the following legend:

> PURCHASED UNDER MY SEARSCHARGE AGREEMENT, INCORPORATED BY REFERENCE, I GRANT SEARS A SECURITY INTEREST IN THIS MERCHANDISE UNTIL PAID, UNLESS PROHIBITED BY LAW

7. On their face, these charge slips include the following recitations:

| Apparent Date | Description | |
|---|---|---|
| 09/27/94 | 2057 43731 TV F27251W MDS | $449.99T |
| 04/28/95 | 20 89251 MICROWAVE, SAL | $139.99T |
|  | 9V BATTERY SAL | .99T |
|  | BELLSTH 47 MDS | 21.99T |
| 05/25/95 | 57 55315 PA4HVPV4 MDS | 29.99T |
| 09/17/95 | TV CT–20G2 SAL | 284.99T |
| 10/01/95 | PA4HVPV451 MDS | 229.99T |
| 11/15/95 | 32 14104HUMIDIFIER, SAL | 69.99T |

8. There are no other attachments to Sears's proof of claim. In particular, there is no other attachment containing the Debtor's signature.

## CONCLUSIONS OF LAW

1. Sears had the procedural burden of producing all writings that evidenced the secured claim it asserted in this case.

2. The signed writings attached to Sears's proof of claim contained descriptions of the property in which it asserts a security interest, with sufficient specificity to satisfy MINN.STAT. § 336.9–203(1)(a), as to the transactions of September 27, 1994, September 17, 1995, and November 15, 1995, and the first two items noted for the transaction of April 28, 1995. They do not contain descriptions with sufficient specificity to satisfy that statute, for any of the other transactions.

3. The signed writings on file do not identify the debt that would be secured by Sears's asserted lien by its amount or scope, with sufficient specificity for those writings to constitute a security agreement within the contemplation of MINN.STAT. § 336.9–203(1)(a).

4. Neither do the writings identify the duration of the attachment of Sears's asserted security interest with sufficient specificity for those writings to constitute a security agreement within the scope of MINN.STAT. § 336.9–203(1)(a).

5. The writings on file, then, do not constitute a security agreement that on its face grants Sears a security interest in any of the assets described.

6. Accordingly, Sears does not have an allowed secured claim in any amount for the purposes of this case.

7. Sears has an allowed unsecured claim in the amount of $3,843.90 for the purposes of this case.

## DISCUSSION

The gist of the Debtor's objection to Sears's claim is simple: while he does not

---

**1.** The latter is an error. The face of Sears's proof of claim, assigned no. 3 on the clerk's claims register, recites a date of June 26, 1997. As evidenced by a receipt-stamp, however, the clerk of this Court did not receive it for filing until July 7, 1997.

272

dispute that he owes Sears the amount stated on its proof of claim, he denies that Sears holds an allowable secured claim for treatment under a plan of debt adjustment. The relevant facts are documentary in origin and nature.

■ The starting point is the requirement of FED.R.BANKR.P. 3001(c):

**Claim Based on a Writing.** When a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

This rule imposes the procedural burden of producing documentary proof of secured status on any creditor that asserts such, when it proves up its claim pursuant to 11 U.S.C. § 501(a) and FED.R.BANKR.P. 3001.[2] *In re Catron,* 198 B.R. 905, 907 (Bankr.M.D.N.C. 1996). *See also In re Papercraft Corp.,* 187 B.R. 486, 500 (Bankr.W.D.Pa.1995) (under Rule 3001(c), proof of claim must include supporting documentation if it exists); *In re Lindell Drop Forge Co.,* 111 B.R. 137, 142 (Bankr.W.D.Mich.1990) (if supporting writing is lost or destroyed, creditor must include explanation re: circumstances). Compliance with this rule enables the proof of claim to achieve the status provided in FED. R.BANKR.P. 3001(f). *In re Los Angeles Internat'l Airport Hotel Assoc.,* 106 F.3d 1479, 1480 (9th Cir.1997), *aff'g* 196 B.R. 134 (9th Cir. BAP 1996). Failure to provide the supporting writing deprives the proof of claim of this evidentiary status. *In re Los Angeles Internat'l Airport Hotel Assoc.,* 196 B.R. at 139. Generally speaking, a creditor should have an opportunity to remedy a "harmless error" in failing to provide the documentation required by Rule 3001(c). *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993). However, when the creditor is large, sophisticated, and clearly aware of the rule's meaning, that opportunity comes in the context of a claim

objection framed under the rule. Thus, when—as here—a claimant has had two opportunities to meet Rule 3001(c), its rights as a secured party should be fixed by the record as it stands when the court undertakes its determination.

■ The parties tacitly agree that Sears granted the Debtors credit through a retail revolving charge account. Sears has not produced an agreement or other document executed by the parties at the inception of the account arrangement, to set forth the terms of the ongoing relationship—even though the charge slips in the record purport to incorporate such an agreement by reference. Because it had the burden to fully document its claim for the purposes of this case, Sears's right to a secured status must stand or fall on the facial content of the charge slips alone.[3]

As the Debtor points out, that content raises two major issues.

***Sufficiency of Description of Collateral.***

MINN.STAT. § 336.9–203(1) governs the creation of security interests in personal property. Subject to several qualifications not relevant here, that statute provides, in pertinent part:

... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) ... the debtor has signed a security agreement which contains a description of the collateral ...;

(b) value has been given; and

(c) the debtor has rights in the collateral.

*See, in general, James Talcott, Inc. v. Franklin Nat'l Bank of Mpls.,* 292 Minn. 277, 194 N.W.2d 775, 781–782 (1972); *Corporate Financers, Inc. v. Voyageur Trading Co.,* 519 N.W.2d 238, 241–242 (Minn.App.1994); *FBS Business Fin. Corp. v. Edison Fin. Group, Inc.,* 464 N.W.2d 304, 306 (Minn.App.1990).

**2.** In doing so, it then dovetails with FED. R.BANKR.P. 3001(f):

**Evidentiary Effect.** A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

**3.** The computer printout titled "D–1 Account Display" is incomprehensible; the reason for including it as an attachment is quite obscure.

The statute, then, establishes two of the facial documentary requisites for a grant of a security agreement: signature by the debtor and a description of the collateral. As to the latter,

> ... any description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described.

Minn.Stat. § 336.9–110.

> The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described.

Uniform Commercial Code Comment to Minn.Stat. § 336.9–110. In an early decision applying the Minnesota enactment of Article 9, it was held:

> The principal function of a description of the collateral in a security agreement is to enable the parties themselves or their successors in interest to identify it, particularly if the secured party has to repossess the collateral or reclaim it in a legal proceeding.

*James Talcott, Inc. v. Franklin Nat. Bank of Mpls.*, 194 N.W.2d at 782.

While these authorities do not identify it as such, one consideration in passing on the sufficiency of a description in a security agreement should be the likelihood of confusion as to the identity of the encumbered assets—whether that be on the part of parties to the subject transaction; competing secured parties, actual or potential; or public officers or officials involved in later legal proceedings to enforce the security interest.

Here, the Debtor takes issue with the one-line appellations assigned on the face of the charge slips to the goods he purchased at Sears; he maintains that these recitations would not enable a third party to pick the subjects out from "similar goods the [Debtor] might possess."

■ This point is not well-taken as to most of the entries. The recitation of a class of household appliances such as "MICROWAVE," "TV," or "HUMIDIFIER," accompanied by a model number, is certainly enough to enable a repossessing officer to distinguish the subject from "similar goods"; model numbers are almost always prominently displayed on such items. Further, it just would not be reasonable to require a high-volume retailer to identify such goods by individual serial number for each charge transaction.[4]

■ On the other hand, the entries for May 25 and October 1, 1995, and the third line for the April 28, 1995 transaction, leave one quite in the dark as to just what is signified; there is no intelligible abbreviation, whole word, or phrase to accompany the model or inventory number recited on the charge slip. As to these charged purchases, the documents at bar do not enable the "reasonable identification" of the putative collateral; whatever the sufficiency of the remainder of the documents, they cannot be deemed to create a security interest for the transactions consummated on those dates.

The result on the Debtor's first theory, then, is split between the parties. The outcome, however, ends up driven by the Debtor's other argument.

### Sufficiency of Language of Terms of Grant

The Debtor's second theory sounds more under bankruptcy law, Rule 3001(c). The gist of it is that if Sears holds a security interest at all, it does so only by virtue of an integrated contract consisting of the terms of the "Searscharge agreement" and the recitals on each charge slip.[5] He argues that Sears's secured claim must fail because it has not produced the larger part of the text of

4. The Debtor has not invoked a corollary point—the potential difficulty of identifying the encumbered one from two items of the same model number present in a debtor's household, where Sears holds a security interest in only one such item. In that situation, Sears's failure to recite a serial number on its charge-account records would properly subject it to the risk of a choice by the repossessing officer, who might well be subject in turn to the suasion of the debtor; it would have no cause for complaint, were it to end up with the one in less desirable condition.

5. The Debtor does not frame his position in so many words, but that is the clear import of his theory.

this contract—that which identifies the debt for which the purchased items stand as collateral, and specifies the terms under which the security interest attaches to and is released from the collateral.

■ Going as it does to the technical process of proving up a claim for the administration of a bankruptcy estate, this point is well-founded. The Minnesota Court of Appeals has made it clear that a security agreement should specifically identify the debt for which it creates a lien; at the very least, a joint reading of the security agreement and the underlying debt instruments should enable one to determine just when a debtor can demand release of a security interest. *See Kadlec Motors, Inc. v. Knudson,* 383 N.W.2d 342, 345–346 (Minn.App.1986) (where motor vehicle installment contract setting forth financing terms for automobile purchase fails to identify second vehicle already owned by debtor as additional collateral, and separate security agreement identifying second vehicle does not recite terms of financing or value of second vehicle, creditor is not given valid security interest in second vehicle). *See also Corporate Financers, Inc. v. Voyageur Trading Co.,* 519 N.W.2d at 241–242.[6]

As the Debtor points out, the requirement that a security agreement identify the underlying debt is more pointedly applicable in the case of a revolving charge account under which a retailer purports to retain a security interest in inexpensive and depreciable consumer goods. A consumer has every right to know the terms under which such encumbrances attach, persist, and lapse or terminate. Can the consumer demand a release of particular goods based on an amortization of their purchase price under a first-in, first-out method? Or is there to be a tacit cross-collateralization *ad infinitum,* with security interests against burned-out toaster ovens and obsolescent video-cassette recorders to follow them into the garbage can, years after their purchase and depreciation, merely be-

cause the debtor continues to maintain an unpaid balance on account of later purchases of blue jeans, curtain rods, and cookware? The issue is far from academic; some major retailers—Sears in their forefront—accuse debtors in bankruptcy of conversion when they are unwilling to reaffirm on charge-card debt and do not account for household appliances and other goods in which Sears decides in hindsight to assert a lien.

As the Debtor further suggests, the issue achieves special focus where the goods were bought some time before the bankruptcy filing—as here, where the contested purchases occurred between eighteen months and three years before he filed for bankruptcy. If a debtor has made significant payments on the charge account over a comparable (and not inconsiderable), period, how are they to be applied in identifying the encumbered status of particular goods?

All of this, of course, is governed in the first instance by contract. This is precisely why Rule 3001(c) requires proof of the contractual basis for claims that were originally evidenced by a writing: to enable the court, the trustee, the debtor, and other creditors to content themselves as to the bona fides of the claim. This promotes certainty in the according of proper priority, parity, and secured status to the claim.[7] Without full evidence of the collateralized status of a claim before the Bankruptcy Court, its holder cannot be accorded the deference owed to a properly secured party.

■ The sparse documents in the record do contain language of grant under the Debtor's signature; as to most of the transactions they contain an adequate description of the purported collateral. However, they are fatally defective in the matter of identifying the debt that is to be secured, and the reciprocal rights of pledgor and pledgee as to the payment of that debt and the retention of the security. They do not establish a valid and enforceable security interest under the

6. Though the *Corporate Financers* court did not state as such, it appears to have envisioned this requirement as inherent in the statutory requirement that value must be given for the grant of security interest. *Id.*

7. To like effect, Fed.R.Bankr.P. 3001(d) requires a proof of claim to document the perfection of a secured claim—because lack of perfection and defective perfection can subject a creditor's lien to avoidance or subordination under 11 U.S.C. §§ 544, 547, and 548.

Minnesota caselaw cited. The submissions with Sears's proof of claim, then, are not enough of a "writing" evidencing a secured status, to satisfy Rule 3001(c). Because Sears has not proved up a secured claim in the first instance, it is not entitled to the allowance of one for the purposes of this case.[8]

### Conclusion

The Debtor's objection to Sears's claim must be sustained. Because this resolves the issue posed by Sears's objection to confirmation, the proceedings on the Debtor's plan need be held in abeyance no longer.

IT IS THEREFORE ORDERED:

1. The Debtor's objection to Sears's claim is sustained.

2. For all further purposes in this case, including distribution under a confirmed plan, Sears will hold an allowed unsecured claim in the amount of $3,843.90.

3. The Debtor's plan will be confirmed by separate order.

---

**8.** It may be beside the point to mention it, but this decision does not pass on whether Sears can take an enforceable purchase-money security interest through the documentation of its customer charge accounts—and it certainly does not reach the issue of whether the language of the "Searscharge Agreement" is sufficient to grant it one.