In re Ronald A. NEDEAU, Debtor.

William ROEMELMEYER, Plaintiff,

v.

SEARS, ROEBUCK & COMPANY, Defendant.

Bankruptcy No. 81–01102–BKC–JAG. Adv. No. 81–0624–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

April 1, 1982.

Steven J. Gutter, Kahn & Gutter, Fort Lauderdale, for Sears, Roebuck & Co.

·Steven H. Friedman, Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for William Roemelmeyer.

William R. Roemelmeyer, Miami Shores, Fla., trustee.

Ronald E. Lee, Hollywood, Fla., for debtor.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

The trustee brought this adversary proceeding to determine the validity, priority and amount of the liens of defendant, Sears, Roebuck & Company, in certain household furniture owned by the debtor (C.P. No. 1). At trial it developed that the debtor owns and Sears claims a security interest in an air conditioner which the trustee was unaware of. The complaint was amended orally at trial, and subsequently by written order (C.P. No. 6) to add this property to the complaint.

The sole issue is whether a valid security agreement exists as to each of these items of property. The goods were purchased on three separate occasions and charged on the Sears charge account used by the debtor and his wife. (The wife is not a debtor in bankruptcy.) There is no single document or security agreement covering any of the property. Defendant's position is that the charge slip for any given purchase, combined with the credit application/security agreement form used to open the charge account, together constitute a security agreement satisfying the requirements of the Florida Uniform Commercial Code. While this might very well be the case in some instances, the facts here do not justify such a result.

The master security agreement is printed on the back side of the Sears credit applica-

tion form (Plaintiff's Exhibit No. 3). The credit application side of the form carries no reference of any type to the security agreement on the back, although, at the bottom of the page is printed, "Notice: See reverse side for important information." Each side has a signature line for execution of that part. The security agreement in Exhibit No. 3 was unsigned, and the credit application form was signed only by the debtor's wife, although the information provided was the debtor's employment history. Frank Berg, a credit manager for Sears, testified that the couple previously had a charge account with Sears in a different geographical location, and that this credit application (Exhibit No. 3) was for purposes of obtaining a local account. However, the prior application and records were not introduced into evidence, and Mr. Berg had no knowledge of whether or not they included the debtor's signature, or whether the security agreement section was signed.

Of the invoices (charge slips) for each of the purchases in question (Plaintiff's Exhibits Nos. 1, 2, and 4) only the one for the purchase of the air conditioning (Plaintiff's Exhibit No. 1) was signed by the debtor. The others were unsigned. (At trial it developed that Plaintiff's Exhibit No. 5 was for the installation of the air conditioner and does not represent a purchase of property on which Sears is claiming a lien.)

Section 679.203, Fla.Stats., as it existed at the time these transactions were entered into, provided in pertinent part:

> . . . a security interest is not enforceable against the debtor or third parties unless . . . [t]he debtor has signed a security agreement which contains a description of the collateral. . . ."

■ The Sears form "Security Agreement" on the back of the credit application primarily deals with the financing terms, but it also includes the brief provision at ¶ 1.B.(7): "Sears shall retain a security interest under the Uniform Commercial Code to merchandise purchased under this agreement until paid in full." The agreement which was admitted into evidence does not satisfy the requirements of § 679.203 be-cause it is not signed. Although it was on the back of the credit application which was signed, there is nothing on either side which could cause that signature to be a signature on the security agreement. It may very well be that the debtor had read the security agreement and agreed to it, but that is not sufficient. As stated in the drafters' Comment No. 4 to the Uniform Commercial Code:

> The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgment and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing.

Since the purchases made under the invoices in evidence as Plaintiff's Exhibits Nos. 2 and 4 also were not signed by the debtor, this is dispositive of the issue as to those items. Sears does not have an enforceable security agreement in that property.

■ The air conditioner shown in Plaintiff's Exhibit No. 1, raises a much more difficult question. That charge slip carries the statement, immediately above the debtor's signature:

> This purchase is made under my Sears Revolving Charge Account and Security Agreement or my Sears Charge Security Agreement . . . which is incorporated herein by reference. . . .

The Sears position is that all the requirements have now been met because there is the debtor's signature, a description of the collateral, and, through the incorporation by reference, a security agreement. A party signing a contract is charged with knowledge of what is contained in the contract,

including incorporations by reference. However, such an incorporation must make clear what is being incorporated. What is the "my Sears Revolving Charge Account and Security Agreement or my Sears Charge Security Agreement" which is incorporated in this case? Sears believes it is self-evident that it is the form security agreement in Plaintiff's Exhibit No. 3 because that agreement is printed on the back of the credit application which led to the charge account under which the air conditioner was purchased. Once again, that may very well be the case, but it requires an assumption by the court which does not seem warranted in view of the very clear-cut UCC requirements.

In *Republic National Bank of Dallas v. Fitzgerald,* 565 F.2d 366, 373 (5th Cir. 1978) Judge Brown's quotation from the case of *In re Murray,* 2 UCC Rep. 667 (D.Ore.1964), although applied to a security agreement in a different type of collateral, is apropos:

> At first glance it may appear that the referee's interpretation is too technical. However, one must recall that the court is interpreting a statute that sweeps away all the technical requirements of a duly prepared and recorded chattel mortgage...
>
> When the state legislature swept away all statutes and judicial precedents concerning secured transactions in personal property, tangible and intangible, existing and future acquisitions, it never intended that the simpler requirements could be ignored. The process of simplification of statutory procedures does not give license to omit one of the simpler requirements.

The Uniform Commercial Code gives a merchant such as Sears a major benefit in not requiring the filing of financing statements for perfection. The least it can do is to get a debtor's signature to clearly show that the debtor has assented to the terms of the Sears security agreement, in compliance with the spirit as well as the letter of § 679.203.

Pursuant to B.R. 921, a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.