**In the Matter of Hazel Hicks CARTER, a/k/a Hazel M. Hicks, Debtor.**

**Hazel Hicks CARTER, Movant,**

v.

**W.S. BADCOCK CORPORATION, Respondent.**

**Bankruptcy No. 94–30769 RFH.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

April 5, 1995.

Richard W. Voss, Loganville, GA, for movant.

John R. Davis, Jr., Macon, GA, for respondent.

Camille Hope, Chapter 13 Trustee, Macon, GA.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Hazel Hicks Carter, a/k/a Hazel M. Hicks, Debtor, Movant, filed a Motion to Avoid Lien on October 11, 1994. W.S. Badcock Corporation, Respondent, filed its response on October 21, 1994. A hearing on Movant's motion was held on February 15, 1995. The Court, having considered the Stipulation of Facts and the arguments of counsel, now publishes this memorandum opinion.

Respondent is in the business of selling home furnishings. Movant signed on May 16, 1991, a charge account agreement titled "Badcock Easy Purchase Plan Credit Agreement" (the "credit agreement"), which provides, in part:

5. I will sign a sales slip at the time of each purchase in your store; and, in case a purchase is made by telephone or by mail, I will accept your sales slip showing such sale and your record of delivery of goods purchased as conclusive evidence (complete proof) of such sale and delivery....

6. I hereby grant you a purchase money security interest in each item of property purchased by me (or by anyone authorized to use this account) from you, which means you keep an interest in the property until I pay you for it as explained in this Agreement, except for any property that, when installed, will become a fixture. You and I intend that floor coverings and unit air conditioners will not be fixtures no matter how they are installed. Such security interest will secure the total amount due from time to time on such item, together with any finance charges, insurance charges, warranty service charges, and non-filing fees applying to such item, and will remain in such item until the total cash price and any finance charges, insurance charges, warranty service charges and non-filing fees have been paid in full. You may apply payments on my account first to any unpaid finance charges, insurance charges, warranty service charges, and non-filing fees in the order such charges are incurred, and then to the total cash price of my purchases in the order such purchases are made. *Items will be paid for in the order in which they are purchased; and, if items are purchased on the same date, the items will be considered paid for in the order of their cash price, with the lowest priced item being considered paid for first.* I agree that the security interest will give both you and me all the rights and remedies granted us by the Uniform Commerical [sic] Code as it applies from time to time in the state where this Agreement is signed. I understand you are allowed by law to charge a fee for filing a security interest statement with public officials; and, instead of filing, that you are allowed to charge a fee for purchasing non-filing insurance. I further understand that you will purchase and charge a fee for non-filing insurance. The amount of the fee for my account is $3.50. This fee will be imposed each time I have an additional charge of $200 or more added to my account. (Emphasis added).

7. If I do not pay all of any required minimum monthly payment when it is due, or if I in any other way fail to meet my obligations under this Agreement, you may declare the entire balance of my account immediately due and payable without notice, and, if you do, *I will immediately surrender possession to you any and all property for which I have not fully paid and in which you still have a security interest.* If my failure to meet my obligations under this Agreement results in your placing my account with an attorney who is not a salaried employee of yours for replevin or other legal action, I will pay you reasonable attorneys' fees and all court and other costs related to such action, as permitted by law, provided that attorneys' fees shall not be payable unless the unpaid balance is more than $300.00 at the time of my default, nor shall such fees be more than 15% of the account balance. (Emphasis added).

Movant made six purchases from Respondent during 1991, 1992, and January of 1993.

Movant signed a "Sales Slip" for each purchase. These purchases have been paid for in full. Respondent asserts no security interest in these purchases.

Movant made the following purchases which have not been paid in full.

| Date of Purchase | Description | Purchase Price |
| --- | --- | --- |
| July 5, 1993 | Flex Swing Set | $209.95 |
| August 16, 1993 | Entertainment Center | 214.95 |
| December 23, 1993 | Stereo | 424.95 |

Movant signed a Sales Slip for each purchase. Respondent asserts that it has a purchase-money security interest in the three articles purchased in July, August, and December of 1993 (the "articles").

Movant seeks to avoid Respondent's security interest under section 522(f)(2) of the Bankruptcy Code.[1] Movant, however, cannot avoid a purchase-money security interest under section 522(f)(2). Movant has the burden of demonstrating that she is entitled to avoid Respondent's security interest. *In re Streeper*, 158 B.R. 783, 786 (Bankr.N.D.Iowa 1993); *In re Cass*, 104 B.R. 382, 388 (Bankr.N.D.Okla.1989).

Movant has possession of the articles at issue. The articles are household furnishings or goods held primarily for household use. The issue before the Court is whether Respondent's lien is a purchase-money security interest.

The Court is persuaded that the issue presented is decided by *Goodyear Tire & Rubber Co. v. Staley (In re Staley)*,[2] in which Judge Owens stated:

This appeal from the bankruptcy court's denial of Goodyear Tire & Rubber Company's claimed security interest in certain of the Chapter XIII wage earner's property involves only a legal question concerning the perfection of purchase-money security interests in consumer goods.

On March 8, 1975, the debtor purchased on credit a stereo, extended warranty contract, and credit life insurance from Goodyear. In the credit agreement, the debtor granted Goodyear a security interest as follows:

"I hereby grant to Goodyear a security interest in each item of merchandise purchased or hereafter purchased under this Agreement, and Goodyear shall retain such security interest in each item of merchandise until it is paid for in full. Accordingly, my installment payments will be applied as follows: In the case of items purchased on difference dates, the item first purchased shall be deemed paid for first; in the case of items purchased on the same date, the lowest priced item shall be deemed paid for first." (Retail Installment Sale Agreement, P 5) (emphasis added).

On March 17, 1976, the debtor purchased under the same arrangement a Westinghouse freezer and warranty, signing another agreement with the same language. The debtor on two other occasions had also

---

1. 11 U.S.C.A. § 522(f)(2) (West 1993). This section provides:

§ 522. Exemptions

....

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

....

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C.A. § 522(f)(2) (West 1993).

2. 426 F.Supp. 437 (M.D.Ga.1977).

purchased automobile maintenance and service under this credit arrangement.

Goodyear filed a claim in the Chapter XIII plan for the sum of $647.99, asserting a security interest in both the freezer and the stereo. The bankruptcy court held that Goodyear had a security interest only in the freezer, relying on *In re Manuel,* 507 F.2d 990 (5th Cir.1975).

In re Manuel involved an add-on clause in a security agreement by which the credit purchaser who never completely paid off his indebtedness before purchasing another item on credit and adding it to that indebtedness never gained title to anything: the creditor retained a security interest in all of the property so purchased to secure only the more recent purchases. The creditor in In re Manuel, not having filed a financial statement, nevertheless argued that his security interest in the household furniture the bankrupt had purchased from him under such an arrangement was perfected pursuant to Ga.Code Ann. [§] 109A–9–302, which provides that filing is not required for perfection of "a purchase money security interest in consumer goods". The court rejected this argument, stating that because the security agreement had purported to make collateral secure debt other than its own price, it was not a purchase money interest entitled to be perfected without filing. *In re Manuel,* supra, at 993.

The holding of In re Manuel does not apply to the stereo in this case. Goodyear's security interest in the stereo by the explicit terms of the agreement was to terminate as soon as the purchase price of the stereo was paid. Because the collateral thus secured only debt representing its price, the security agreement did create a purchase money security interest which, being in a consumer good, did not need to be filed in order to be perfected.

426 F.Supp. at 437–38.

Turning to the case at bar, Respondent asserts no security interest in articles that have been paid for in full. The credit agreement signed by Movant provides that articles "will be paid for in the order in which they are purchased." The credit agreement provides that, upon default, Movant is to surrender only the articles which have not been paid for in full.

"Thus, it was easy for the court to ascertain which items had been fully paid for and hence no longer served as collateral ... [Here] a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money...." *Southtrust Bank of Alabama, National Association v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1243 (11th Cir.1985).

*Compare W.S. Badcock Corp. v. Banks (In re Norrell),* 426 F.Supp. 435, 436 (M.D.Ga. 1977) (no purchase-money security interest if security agreement provides that as long as any indebtedness is outstanding, property stands as collateral not only for its price but also for the price of property subsequently acquired on credit).

The Court is persuaded that Respondent holds a purchase-money security. interest in the articles at issue.

■ Movant also contends that the credit agreement did not create a valid security interest because Movant's signature appears only on the back side of the credit agreement. Movant asserts that the back side makes no reference to the front side of the credit agreement. Movant relies upon *Roemelmeyer v. Sears, Roebuck & Co. (In re Nedeau).*[3]

The Court is not persuaded by this argument. The Court is persuaded that the credit agreement should be viewed in its entirety. The Court is persuaded that Movant's Motion to Avoid Lien must be denied.

---

**3.** 24 B.R. 1 (Bankr.S.D.Fla.1982).