**In re Christine M. KAMPS, Debtor.**

**Bankruptcy No. LA–97–37220–SB.**

United States Bankruptcy Court,
C.D. California.

Feb. 20, 1998.

Nancy Knupfer, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, Chapter 7 Trustee.

Diane James, Santa Ana, CA, for First North American National Bank.

## AMENDED OPINION DENYING MOTION TO APPROVE REAFFIRMATION AGREEMENT

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

The debtor Christine Kamps has brought this motion to reaffirm a credit card debt. This motion raises two questions: first, what disclosures a creditor must make to a debtor to support a reaffirmation agreement for a prepetition debt under the Bankruptcy Code;[1] and second, what procedures must be followed to create a valid reaffirmation of a dischargeable debt?

The court holds that the reaffirmation agreement between the bank and the debtor cannot be approved. The court bases this conclusion on procedural deficiencies, on the failure to make disclosures supporting the bank's claim that it holds a security interest, on the lack of bankruptcy-related disclosures, on the failure to provide financial disclosures (including Regulation Z disclosures), and on the undue hardship that the agreement would impose on the debtor.

### II. Facts

The debtor Christine Kamps filed this case principally to discharge credit card debt.[2]

---

1. All references to the Bankruptcy Code are to sections of the same number in 11 U.S.C.A. § 101–1330 (West 1993 & Supp.1997).

2. Everything that the court knows about the debtor is gleaned from the court file. This information is contained principally in the schedules and the motion before the court.

The debtor's Schedule F shows that at the time of filing her bankruptcy petition she owed debts totaling $32,729.67 to nine credit card issuers including two department stores. Apart from personal and household goods and a small amount of cash, her only possession is her 1993 Audi 90S, which she valued at $10,000 and on which she owed $12,000 at the time of filing.[3]

For more than a year the debtor has worked for Billboard Live, where she is director of sales. At the time of filing her bankruptcy petition, her monthly gross income was $4166.63, and her net income was $2807.78 after the deduction of payroll taxes (including social security) and insurance (presumably health insurance). The debtor's monthly expenses total $3230.20. This budget includes car payments and insurance, but excludes debt service on her credit card debts. The debtor thus had a monthly deficit of $422.42, apart from servicing the credit card debt.

For reasons that do not appear in the case file, the debtor suffered a moderate reduction in income in 1997. In 1996 she earned $54,000 and in 1995 she earned $50,000. By her filing date on July 16, however, she had earned only $22,000 in 1997.

The debtor appeared at her meeting of creditors on August 21, 1997 and was examined by the trustee Nancy Knupfer. The trustee found no assets to administer for the benefit of creditors, and has filed a "No Asset" report. No creditor has objected to any of the exemptions that the debtor has claimed, and none has filed an adversary proceeding to challenge the debtor's right to a discharge or to object to the dischargeability of a debt. The debtor's discharge was entered on October 28, 1997.

The debtor has filed a motion to reaffirm a debt owing to First North American National Bank ("the bank"), a creditor that is not disclosed on any of the debtor's filings with the court. The reaffirmation agreement was signed on August 21,[4] the date of the meeting of creditors, and was presumably entered into on that occasion.

The agreement proposes to reaffirm a debt of $250.93, and to pay twenty dollars per month for an unspecified period of time to repay this debt. Apparently the bank contends that the debt is secured: under the security description it states: "CD Changer, FM. Modulators." However, there is no other documentation to support a claim that the bank is a secured creditor, or even a creditor at all. The agreement provides for a new credit limit of $251, and states that the "Interest Rate (APR)" is "As per terms of original account credit agreement." Apart from the account number, no further disclosure of credit terms is provided in the reaffirmation agreement. Because neither the bank nor the debtor has filed any other documents in connection with this reaffirmation agreement, the court concludes that the bank made no other disclosures to the debtor with respect to this agreement.

### III. Discussion

■ Subject to certain exceptions enumerated in Bankruptcy Code § 523, section 727 discharges a chapter 7 debtor from all debts that have arisen before the date of the order for relief. *Republic Bank v. Getzoff,* 180 B.R. 572, 573 (9th Cir. BAP 1995); *In re Price,* 871 F.2d 97, 98 (9th Cir.1989). Once a discharge is entered, section 524(a) permanently enjoins all creditor actions to collect debts discharged under section 727. *Getzoff,* 180 B.R. at 573; *In re Latanowich,* 207 B.R. 326, 334 (Bankr.D.Mass.1997). Any violation of this injunction is punishable by damages, including punitive damages, and criminal contempt of court. *Latanowich,* 207 B.R. at 333.

### A. Nature of Reaffirmation Agreement

■ A debtor may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement is binding only if it is made in compliance with section

---

3. In her statement of intention filed under Bankruptcy Code § 521, the debtor stated that she wanted to keep the car and to reaffirm the debt on it.

4. The reaffirmation agreement itself is dated August 20, but this appears to be an error. The motion states that it was executed on August 21, and appears to be signed with the same pen as both parties used to sign the agreement itself.

524(c) and (d). *Latanowich,* 207 B.R. at 334; *Getzoff,* 180 B.R. at 574; *In re Bowling,* 116 B.R. 659, 663 (Bkrtcy.S.D.Ind.1990); *see In re Daily,* 47 F.3d 365, 367 (9th Cir.1995).

■■■■ The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1168 (9th Cir.1985); *In re Fernandez–Lopez,* 37 B.R. 664, 667 n. 1 (9th Cir. BAP 1984); *In re Noble,* 182 B.R. 854, 856 (Bankr.W.D.Wash.1995); *Getzoff,* 180 B.R. at 574; *Bowling,* 116 B.R. at 664. Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, reaffirmations are not favored under the Bankruptcy Code, and strict compliance with the specific terms in section 524 is required. *Getzoff,* 180 B.R. at 574; *Lindale Nat'l Bank v. Artzt (In re Artzt),* 145 B.R. 866, 868 (Bankr.E.D.Tex.1992); *In re Petersen,* 110 B.R. 946, 949 (Bankr.D.Colo.1990); *In re Gardner,* 57 B.R. 609, 611 (Bankr.D.Me. 1986). A reaffirmation agreement which does not comply fully with section 524 is void and unenforceable. *Getzoff,* 180 B.R. at 574; *Artzt,* 145 B.R. at 868.

Congress was particularly concerned with reaffirmation practice when it enacted the Bankruptcy Code in 1978. The House Report states:

[U]nsuspecting debtors are led into binding reaffirmations [under the Bankruptcy Act], and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have over unsophisticated debtors in this area ... still remain [despite amendments enacted in 1970]. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.

H.R.Rep. No. 95–595, at 163, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6124.

The requirements for a reaffirmation agreement that can be approved by the court are quite lengthy, and are set forth in Bankruptcy Code § 524(c).[5] Where a debtor is not represented by counsel in the negotiation of the agreement, section 524(d) requires the

---

**5.** Bankruptcy Code § 524(c) provides:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A)in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C.A. § 524(c) (West 1993 & Supp.1997).

court to hold a hearing to give certain information to the debtor and to determine whether the agreement complies with specified statutory requirements.[6] These requirements are both substantive and procedural.

■ If, after the court has given the required disclosures, the debtor decides to rescind the reaffirmation agreement, the debtor may withdraw the agreement. If the court finds that the agreement does not meet the statutory requirements (either procedural or substantive), it must disapprove the agreement. Such disapproval is required, even though no party appears in court to oppose the reaffirmation. If either the debtor withdraws the reaffirmation agreement or the court disapproves it, the debtor is not bound by the agreement, and the debt is discharged.

### B. Procedural Requirements

The procedural status of a motion by a debtor, who is unrepresented by counsel in the negotiation process, to approve a reaffirmation agreement is unusual in the federal court system. Unlike the usual case presented to a court for decision, there is no adversary opposing the reaffirmation.[7] Indeed, a motion to approve a reaffirmation agreement does not come to the court at all unless the debtor and the affected creditor have already agreed that the debt in question should be reaffirmed. *See* Bankruptcy Code § 524(c).

■ No notice to any other creditor is required for a reaffirmation proposal.[8] Thus other creditors are given no opportunity to object to a debtor's reaffirmation of a debt.[9] Nonetheless, if the debtor is not represented by counsel with respect to the negotiation of the reaffirmation agreement, the court has an important role mandated by Congress with respect to the agreement.[10]

■ The substantive and procedural conditions for a valid reaffirmation agreement require that a bankruptcy court devote substantial attention to such an agreement by a debtor who is unrepresented by counsel. It is frequently necessary to take testimony from the debtor to determine whether the requirements have been met. It is also sometimes necessary to take testimony from the representative of the creditor who negoti-

---

**6.** *Bankruptcy Code § 524(d) provides:*

In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any hearing, the court shall inform the debtor that discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—
(1) inform the debtor—
  (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c)(6) of this section; and
  (B) of the legal effect and consequences of—
    (i) an agreement of the kind specified in subsection (c) of this section; and
    (ii) a default under such an agreement; and
(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in

whole or in part on a consumer debt that is not secured by real property of the debtor.
11 U.S.C.A. § 524(d) (West 1993 & Supp.1997).

**7.** Perhaps the most analogous proceeding to a reaffirmation in the district court is a proceeding to determine whether to accept a guilty plea by a criminal defendant. For the procedures governing such a proceeding, *see* F.R.CRIM.P. 11.

**8.** The only notice required for a reaffirmation agreement is to the chapter 7 trustee (who has no interest in reaffirmation agreements) and the United States Trustee (who has never appeared in my court on a hearing on a reaffirmation agreement).

**9.** *But see In re Bauer,* 1997 WL 752652 (Bankr. E.D.Va.1997) (entertaining opposition to reaffirmation agreement by debtor's former wife and son, who were owed support arrearages).

**10.** The Bankruptcy Code is silent as to what role, if any, the court may have where a debtor is represented by counsel "that represented the debtor during the course of negotiating" a reaffirmation agreement. *See* Bankruptcy Code § 524(c)(3). In some circumstances, courts have an important role in reviewing the reaffirmation process to assure that counsel have performed their duties properly. *See, e.g., In re Bruzzese,* 214 B.R. 444 (Bankr.E.D.N.Y.1997).

ated the reaffirmation agreement with the debtor, to make sure that the agreement has not been infected with fraud or false information or promises by the creditor.[11] .

There are six procedural prerequisites to the approval of a reaffirmation agreement made by a debtor who is not represented by counsel. *In re Noble,* 182 B.R. 854, 896–57 (Bankr.W.D.Wash.1995); *In re Ellis,* 103 B.R. 977, 980–81 (Bankr.N.D.Ill.1989). Five of these requirements must be met before the hearing on the reaffirmation agreement. The sixth is undertaken by the court at the hearing.

## 1. Timing of the Agreement

The window of opportunity for a debtor to make a valid reaffirmation agreement is limited. Bankruptcy Code § 524(c)(1) requires that the agreement be made before the chapter 7 discharge is granted. *In re Bowling,* 116 B.R. 659, 663–64 (Bankr.S.D.Ind.1990) (disapproving a reaffirmation that was untimely). The discharge is normally entered a month or two after the meeting of creditors required by Bankruptcy Code § 341(a). The United States Trustee calls a meeting of creditors in a chapter 7 case between twenty and forty days after the filing of a chapter 7 case.[12] F.R.BANKR.P. 2003(a). Thus the window of opportunity for entering into a reaffirmation agreement is usually limited to three or four months after the case is filed.

The reaffirmation agreement in this case appears to have been made on August 21, 1997, more than a month before the discharge was entered. Thus it was made within the time frame mandated by the Bankruptcy Code.

## 2. Conspicuous Statements

Bankruptcy Code § 524(c)(2) requires that the reaffirmation agreement contain the following two statements:

(a) that the agreement may be rescinded at any time before discharge or within 60 days of the filing of the agreement with the court (whichever comes later); and (b) that the agreement is not required under the Bankruptcy Code, under nonbankruptcy law, or under any agreement not in accordance with section 524.

Each of these statements must be clear and conspicuous. *Id.; see In re Noble,* 182 B.R. 854, 857–58 (Bankr.W.D.Wash.1995) (disapproving reaffirmation agreements where the required language was lacking or insufficiently conspicuous). The agreement in this case contains the required statements, and it appears to the court that they are suitably conspicuous.

## 3. Filing with the Court

Bankruptcy Code § 524(c)(3) requires that a reaffirmation agreement be filed with the court. Numerous creditors have failed to observe this requirement, both in this district and in others. *See, e.g., In re Bruzzese,* 214 B.R. 444 (Bankr.E.D.N.Y.1997); *In re Latanowich,* 207 B.R. 326, 333 (Bankr.D.Mass. 1997). Sears, Roebuck & Co., for example, has recently agreed to pay $125 million to settle with debtors in consequence of its violation of this requirement. *Brioso v. Sears, Roebuck & Co. (In re Brioso),* Case No. 97–11503, Adv. No. 97–1222 (Bankr.D.Mass. filed March 31, 1997). A class action is pending in this district against Robinson's–May Co. for its systematic violation of this requirement.

The Bankruptcy Code does not specify who can file a reaffirmation agreement, i.e., who can bring it to the courthouse.[13] It

**11.** The court has taken testimony from a number of debtors in recent months on their appearance at reaffirmation hearings. This testimony has disclosed that creditors in Los Angeles frequently misrepresent the duration of payments under reaffirmation agreements, whether interest will be charged on such debts, whether debtors are required to enter into such agreements, and whether creditors have valid security interests in property allegedly securing the debts in question.

**12.** Procedurally, the scheduling of the meeting of creditors in this district takes place in the clerk's

office when the chapter 7 petition is filed. The United States Trustee gives the court a list of chapter 7 trustees to be appointed, and the dates and times of their § 341 meetings. The particular trustee and § 341 meeting date are then assigned by computer when the filing is logged into the court computer.

**13.** It is important to distinguish between filing the reaffirmation agreement and making a motion for its approval. Filing is a purely ministerial act—bringing it to the courthouse. A motion for approval of the reaffirmation agreement, in

is not particularly important who makes this filing with the court. Indeed, many filings with the court are done by messengers, whose identity is normally not disclosed because it is of no significance. Creditors who obtain reaffirmation agreements are well advised to file the agreements themselves to assure that this requirement is met.

The reaffirmation agreement in this case was duly filed with the court. Thus this requirement is met.

## 4. Rescission by the Debtor

Bankruptcy Code § 524(c)(4) gives the debtor a substantial period of time to have second thoughts about the advisability of a reaffirmation agreement. This section gives the debtor either sixty days from the date the reaffirmation agreement is filed with the court or until the date of discharge, whichever date is later, to rescind a reaffirmation agreement. Rescission is accomplished by giving notice to the applicable creditor. *Id.*

The court has no information on whether the debtor has rescinded the reaffirmation agreement in this case by giving notice to the bank. Neither the debtor nor the bank appeared at the hearing on the reaffirmation agreement, and neither has filed anything with the court to disclose whether such a rescission was made. The failure to provide this information requires that the reaffirmation agreement be disapproved.

## 5. Motion by Debtor to Approve Reaffirmation

Rule 4008 of the Federal Rules of Bankruptcy Procedure governs the timing for a hearing on a reaffirmation agreement. It provides in relevant part:

> Not more than 30 days following the entry of an order granting or denying a discharge ... and on not less than 10 days notice to the debtor and the trustee, the court may hold a hearing as provided in § 524(d) of the Code. A motion by the debtor for approval of a reaffirmation agreement shall be filed before or at the hearing.

■ Only the debtor may seek bankruptcy court approval of a reaffirmation agreement. *McClellan Federal Credit Union v. Parker (In re Parker),* 193 B.R. 525, 527–28 (9th Cir. BAP 1996); *801 Credit Union v. Heller (In re Heller),* 123 B.R. 782, 783 (Bankr.S.D.Ohio 1991); *In re Eccleston,* 70 B.R. 210, 213 (Bankr.N.D.N.Y.1986); *In re Farmer,* 13 B.R. 319, 320 (Bankr.M.D.Fla. 1981); *In re Newsome,* 3 B.R. 626, 628 (Bankr.W.D.Va.1980); 4 COLLIER ON BANKRUPTCY, ¶ 524.04 (Lawrence P. King ed., 15th ed.1997); 3 WILLIAM J. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE, § 48:11 (2d ed.1994).[14] The creditor whose claim is involved in a reaffirmation agreement has no standing to request, contest or impose a reaffirmation agreement on the debtor, because the execution of a reaffirmation agreement is a purely voluntary choice for the debtor. *In re Bauer,* 1997 WL 752652 (Bankr.E.D.Va. 1997).

Furthermore, Rule 4008 authorizes only "[a] motion by a debtor for approval of a reaffirmation agreement ...." This procedure is reflected in Official Form No. B 240, the official form for a reaffirmation agreement. Where a debtor is not represented by counsel, the motion must be made and signed by the debtor only: the form permits no such motion by a creditor.

contrast, can only be made by the debtor. *See infra.*

**14.** There is language in one opinion that could be interpreted to the contrary. In *Arnhold v. Kyrus,* 851 F.2d 738 (4th Cir.1988), the court stated that a creditor beneficiary of a reaffirmation may bring the reaffirmation to the attention of the court, because this would advance the creditor's interest in having the reaffirmation validated and might bring legitimate pressure on the debtor to honor the reaffirmed debt. *Id.* at 741. However-

er, the court found that the *debtor* must take specific in court action to preserve the claim of a favored creditor. *Id.* at 742. The court further stated that any obligation a debtor feels to pay the reaffirmed debt must generate from the debtor's personal desire, not from a legal obligation. *Id.* at 741. In *Arnhold* the court reversed a district court finding that the debtor's failure to bring the reaffirmation agreement to the attention of the court at the discharge hearing constituted bad faith that required the denial of a discharge. *Id.* at 741–42.

*Parker,* which is binding precedent on this court,[15] is instructive on this point. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") held that a creditor that is a beneficiary of a reaffirmation agreement (as to both a secured debt and an unsecured debt) had no standing to appeal the bankruptcy court's disapproval of the reaffirmation. The Ninth Circuit BAP found that the creditor had no right to payment of the unsecured debt, because it was otherwise dischargeable. The creditor retained its collateral for the secured debt, the BAP found, and it was not entitled to anything more. The BAP also found that the creditor suffered no adverse pecuniary effect from the disapproval of the reaffirmation.

■ The BAP could make this determination only on the assumption that a creditor has no pecuniary interest in a reaffirmation in the first instance. It follows that a creditor lacks standing in the bankruptcy court as well to bring a motion to approve a reaffirmation agreement, or to withdraw such an agreement from court consideration. *Bauer, supra; In re Carlos,* 215 B.R. 52, 62 (Bankr. C.D.Cal.1997).

In this case the debtor has made a motion for approval of the reaffirmation agreement, pursuant to this rule. This requirement is rarely satisfied in this district: it is highly unusual for a debtor not represented by counsel to make a motion for approval of a reaffirmation agreement. Indeed, in twelve years on this court I have never seen such a motion prior to this one.

### 6. Reaffirmation Hearing

■ The final procedural requirement for a reaffirmation agreement, where the debtor is not represented by counsel in the negotiation of the reaffirmation agreement, is that the court must hold a hearing on the agreement, and make determinations that are mandated by statute. *In re Perez,* 177 B.R. 319, 322 (Bankr.D.Neb.1995). The debtor is

required to attend the hearing. *Id.* at 321. The debtor may be required to testify.

A hearing is not required, and the court is not required to make the disclosures mandated by section 524(d), if the debtor is represented by counsel in the negotiation of the agreement. In place of the court's disclosures, counsel must file an affidavit or declaration accompanying the agreement which states that:

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement....

Bankruptcy Code § 524(c)(3).[16]

■ However, this exemption does not apply unless the debtor is represented by counsel "during the course of negotiating an agreement under this subsection...." It is not sufficient if counsel has only reviewed the reaffirmation agreement afterward and advised the debtor on it. *In re Perez,* 177 B.R. 319, 322–23 (Bankr.D.Neb.1995).

In this case, no attorney has filed such a declaration on behalf of Ms. Kamps. Thus the court was required to give the debtor the disclosures mandated by the Bankruptcy Code before the reaffirmation could be approved.

### C. Judicial Responsibilities

■ In addition to assuring that the procedural requirements for the approval of a reaffirmation agreement are met, section 524(d) imposes two statutory duties on the court. First, the court is required to inform the debtor (a) that such an agreement is not required by the Bankruptcy Code, any non-

---

**15.** *Coyne v. Westinghouse Credit Corp. (In re Globe Illumination Co.),* 149 B.R. 614, 617–21 (Bankr.C.D.Cal.1993)

**16.** There are presumably a number of other matters on which counsel should advise a client in

connection with a reaffirmation agreement, which vary from case to case. However, counsel is not required to report to the court on these matters, and they presumably would be protected from disclosure by the attorney-client privilege.

bankruptcy law or any agreement not made in accordance with section 524(c), and (b) of the legal effect and consequences of a reaffirmation agreement and any default thereunder. *Id.* § 524(d)(1); *In re Latanowich,* 207 B.R. 326, 333 (Bankr.D.Mass.1997). Second, the court is required to determine that the reaffirmation agreement (a) does not impose an undue hardship on the debtor or a dependent of the debtor, and (b) is in the best interest of the debtor. Bankruptcy Code § 524(d)(2); *Latanowich,* 207 B.R. at 333. These requirements are mandatory: they exist to protect a debtor from the debtor's own bad judgment, and the debtor cannot waive them. *Latanowich,* 207 B.R. at 335.

## 1. Informing the Debtor

Procedurally, section 524(d)(1) requires that the court inform a debtor, who is not represented by counsel in the negotiation of the reaffirmation agreement, that the debtor has no legal obligation to enter into the reaffirmation agreement, and to inform the debtor of the legal effect and consequences of the reaffirmation agreement and any default thereunder.[17] The court was prevented in this case from giving this information to the debtor, because the debtor did not appear at the reaffirmation hearing. For this reason the reaffirmation agreement must be disapproved.

## 2. Lack of Hardship and Best Interest of Debtor

After having satisfied itself that all of the procedural prerequisites of a reaffirmation agreement are met, where the debtor is not represented by counsel in negotiating the reaffirmation agreement, the court is required to make its own independent evalua-

tion of the merits of the agreement.[18] Section 524(d)(2) requires the court to determine whether the agreement complies with the requirements of section 524(c)(6). To make this determination, the court must find that the agreement does not impose an undue hardship on the debtor or a dependent of the debtor, and that the agreement is in the debtor's best interest.

### D. Undue Hardship

If a reaffirmation agreement imposes an undue hardship either on the debtor or on a dependent of the debtor, the court must disapprove the agreement.[19] To make this determination, the court must examine the financial circumstances of both the debtor and the debtor's dependents. In this case, it appears that the debtor has no dependents. Thus the court needs to consider only the debtor's financial circumstances.

Presumptively, the court makes its hardship determination by analyzing the income and expenses of the debtor's household. In the absence of any other information, the court may make this determination based upon Schedule I, the schedule of the debtor's monthly income, and Schedule J, which discloses the debtor's monthly expenses. These schedules are part of Official Form 6, a set of schedules of financial affairs that each debtor must file with the court within fifteen days of the filing of the case. *See* FED.R.BANKR.P. 1007(B)(1).

In this case it is clear that the payment of $20 per month, as proposed in the reaffirmation agreement, will impose an undue hardship on the debtor. Her budget is already out of balance by $422.42, and she must sacrifice this amount from her living expenses to make ends meet. The court finds that the addition of a reaffirmed debt to a

---

**17.** If the debtor is represented by counsel with respect to the reaffirmation agreement, counsel is required to make these disclosures to the debtor, and to file a declaration or affidavit with the court that the disclosures have been made. 11 U.S.C.A. § 524(c)(3)(C) (West 1993). The court is in the process of formulating a mandatory declaration for counsel for the debtor to submit on this subject.

**18.** Section 524(d)(2) recognizes two exceptions, where the court need not determine whether the reaffirmation agreement meets the requirements

of section 524(c)(6). Such a determination is not required if the underlying debt is not a consumer debt (in whole or in part), or if it is secured by real property of the debtor. Neither of these exceptions applies in this case.

**19.** If the debtor is represented by counsel, counsel must make this determination, and must file a declaration or affidavit stating that the agreement does not impose an undue hardship on the debtor or a dependent of the debtor. 11 U.S.C.A. § 524(c)(3)(B) (West 1993). .

budget that is already out of balance imposes an undue hardship on a debtor. In consequence, the reaffirmation must be disapproved on these grounds.

### E. Best Interest of the Debtor

In addition to finding that the reaffirmation agreement will not impose an undue hardship on the debtor or a dependent of the debtor, where the debtor is unrepresented by counsel in negotiating the agreement, the court must also find that the agreement is in the best interest of the debtor. The debtor's best interest encompasses a variety of possible factors, which turn on the facts of the individual case. There are a number of common factors, however, that must be met for the court to make such a finding.

The contents of the "best interest of the debtor" test are partially explicated by the Bankruptcy Code's requirements where a debtor is represented by counsel. The Code imposes no obligation on counsel to determine whether a reaffirmation agreement is in the debtor's best interest. However, it does require counsel to determine that the reaffirmation agreement represents a fully informed and voluntary agreement by the debtor, and to file a declaration or affidavit with the court that this requirement has been met, in the attorney's own judgment. Bankruptcy Code § 524(c)(3)(A).

### 1. Voluntary Assent

■ Taking a clue from the requirements imposed on counsel by section 524(c)(3)(A), the court finds that it cannot determine that the "best interest of the debtor" test is met unless the debtor has voluntarily entered into the agreement after having been fully informed. The chief impediment to voluntary assent to a reaffirmation agreement occurs when the creditor misrepresents the contents of the reaffirmation agreement, and in reliance thereon the debtor signs an agreement that is different from what the debtor thinks it is.

■ The court has taken testimony from a number of debtors who have proposed reaffirmation agreements, and has found that frequently (but not always) a creditor has misrepresented that the reaffirmation of the debt is required in the bankruptcy process. On frequent occasions, also, creditors misrepresent the contents of an agreement to the debtor. For example, a creditor sometimes represents that no interest will be charged on the reaffirmed debt, when in fact the agreement calls for interest at the (unspecified) rate provided for in the prepetition account agreement. If a debtor's assent to a reaffirmation agreement is fraudulent induced, the agreement does not meet the voluntariness requirement.

In this case, the court is unable to determine whether the debtor has voluntarily entered into the reaffirmation agreement, because the debtor failed to appear at the hearing on the agreement to testify as to the circumstances of her entering into the agreement.

### 2. Fully Informing the Debtor

Before making a voluntary reaffirmation agreement, a debtor must be fully informed of the contents of the agreement. The court has seen no reaffirmation agreement for credit card debt (including the agreement before the court in this case) that meets this requirement.

### a. The Underlying Debt

■ There is no basis for the reaffirmation of a debt if no debt is owing to the creditor in the first place. In order for the debtor to be fully informed, the creditor must show that a debt is in fact owing, and the amount thereof. The bank has provided no such evidence in this case.

Showing that a debt is in fact owed is usually not at all difficult. A statement of account is usually sufficient, if it satisfies the admissibility requirements for a business record. *See* Fed.R.Evid. 803(6) (records of regularly conducted activity); *United States v. Catabran*, 836 F.2d 453, 457–58 (9th Cir. 1988) (admissibility of computer business records). The underlying contract between the debtor and the creditor is also required. *In re Bruzzese*, 214 B.R. 444, 452 (Bankr. E.D.N.Y.1997).

### b. Regulation Z Disclosures

The court does not cut from whole cloth in determining the required financial disclosures to assure that a consumer is fully informed of the contents of a credit transaction such as a reaffirmation agreement. The Federal Reserve Board[20] has given careful consideration to the content and format of disclosure that is required in a consumer credit transaction[21] and has given careful tailoring to the required disclosures. The Federal Reserve Board standards are set forth in Regulation Z, 12 C.F.R. 226 (1998).

Congress enacted the Truth in Lending Act ("TILA"), section 1 of Public Law 90–321, in 1968. Congress stated the purpose of this portion of the Act as follows:

> It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C.A. § 1601(a) (West 1998). The TILA gives the Federal Reserve Board the obligation to prescribe regulations to carry out its purposes. 15 U.S.C.A. § 1604(a) (West 1998). Pursuant to this statutory mandate, the Board has promulgated Regulation Z, 12 C.F.R. § 226 (1998), which details the disclosures that a lender must make in a consumer credit transaction.

Regulation Z divides consumer credit into two categories, open end credit and closed end credit, and has a separate set of disclosure requirements for each type of credit. Sections 226.5–226.16 govern open end credit, and sections 226.17–24 govern closed end credit.

Regulation Z defines open end credit as follows:[22]

> **"Open-end credit"** means consumer credit extended by a creditor under a plan in which:
>
> (i) The creditor reasonably contemplates repeated transactions;
>
> (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and
>
> (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

*Id.* § 226.2(a)(15) (1998) (emphasis in original). Regulation Z defines closed-end credit as "consumer credit other than 'open-end credit'...."

Regulation Z divides its disclosure requirements for open end credit into four parts. The first set of disclosure requirements must be satisfied in the initial credit or charge card application or solicitation. The required disclosures in this document include the annual percentage rate, any fees for issuance or availability of the card, any minimum finance charge, any transaction charge, the applicable grace period, the balance computation method, a statement on when payments are due, and any charges for cash advances, late payments or over-the-limit charges. *Id.* § 226.5a.

The next set of disclosure requirements applies when a customer agrees to accept a credit card. These disclosures are typically sent out to the customer with the credit card itself. These disclosures must include the method for the determination of finance charges (including when finance charges be-

---

**20.** California also has a detailed set of disclosures required for consumer credit transactions in the Unruh Act. *See* Cal.Civ.Code §§ 1801–1812.20 (West 1997). A number of the provisions of the Unruh Act are preempted by Regulation Z. See note 31, *infra*. While the coverage and the requirements of the Unruh Act differ in certain details from those of Regulation Z, these differences are not relevant to this case.

**21.** Regulation Z applies to any individual or business that offers or extends credit when four

conditions are met: (1) the credit is offered or extended to consumers; (2) the offering or extension of credit is done regularly; (3) the credit is subject to a finance charge or is payable by written agreement in more than 4 installments; and (4) the credit is primarily for personal, family or household purposes. *Id.* § 226.1(c). It appears that the bank in this case meets these criteria.

**22.** For the Regulation Z disclosure requirements for closed end credit, *see id.* § 226.18 (1998).

gin to accrue, the periodic interest rate, and an explanation of the method used to determine the balance to which interest is applicable), other charges, security interests, a statement of billing rights, and home equity plan information (if applicable). *Id.* § 226.6.

A third set of disclosure requirements under Regulation Z applies for the periodic (usually monthly) statement that a creditor is required to provide to a customer. These disclosures include the previous balance on the account, the identification of transactions (pursuant to the requirements of section 226.8) during the billing cycle, any credits, the periodic rates, the balance on which any finance charge is computed, the amount of any finance charge, the annual percentage rate, any other charges, the closing date for the billing cycle and the balance on that date, any free-ride period, and the address for notice of billing errors. *Id.* § 226.7.

Regulation Z imposes a fourth set of disclosure requirements that apply whenever there is a change in the terms of the credit agreement, and when an annual or card renewal fee is charged. *Id.* § 226.9. In addition, the creditor must provide an annual statement of billing rights. *Id.*

Regulation Z further provides that, whenever there is a refinancing of credit subject to its disclosure requirements, new disclosures complying with the Regulation must be made. *Id.* § 226.9 (open-end credit); § 226.20 (closed-end credit).

### b. Exemption from Regulation Z for Reaffirmation Agreements

Regulation Z apparently exempts all court-approved reaffirmation agreements from the scope of its coverage. Absent an exemption, reaffirmations of debts that required Regulation Z disclosures at their outset would require new disclosures under the subsequent disclosure requirements of section 226.9 (open end credit) and section 226.20 (closed end credit).

Both of these sections specify that a change in the terms of credit resulting from "an agreement involving a court proceeding" does not require new Regulation Z disclosures. *See id.* §§ 226.9(c)(2); 226.20(a) (1998). The Official Staff Commentary to section 226.20(a)(3) [23] states that this exception includes reaffirmations of debts discharged in bankruptcy.[24] Similarly, the staff commentary to the definition of "credit" in section 226.2(a)(14) states, "court approvals of reaffirmation of debts in bankruptcy" are not considered "credit" for the purposes of Regulation Z.[25] The court finds that a reaffirmation agreement is a refinancing of credit, that would be subject to all of the Regulation Z disclosure requirements absent this regulatory exemption.

The purpose of the Regulation Z "court proceeding" exemption is to permit a court to determine what disclosures are required in a transaction over which it has jurisdiction, and to tailor the disclosures to the transaction at issue. There are many kinds of transactions that are subject to court approval, including the settlement of a lawsuit, the determination of child and spousal support following a divorce, and the confirmation of a plan of reorganization under chapter 11, 12 or 13 of the

**23.** Section 20(a) is found in the "Closed End Credit" section of Regulation Z, and by its terms does not apply to open end credit, such as credit cards. The court assumes that, if asked, the Federal Reserve Board staff would opine that the reaffirmation of open end credit in bankruptcy would also not invoke the redisclosure requirements of section 20(a).

**24.** Apparently the Federal Reserve Board staff thinks that the bankruptcy reaffirmation exception of Regulation Z applies both to reaffirmations requiring court approval (because the debtor is not represented by counsel) and to reaffirmations where the debtor is represented by counsel. In the latter case, normally the only court involvement is the filing of the reaf-

firmation agreement in the case file. *But see In re Bruzzese,* 214 B.R. 444, 459 (Bankr.E.D.N.Y. 1997) (dictum that the "court proceeding" exception to the disclosure requirements of Regulation Z does not apply to reaffirmations signed by debtor's counsel).

**25.** This comment appears to apply only to reaffirmations approved by the court, which normally occurs only where the debtor is not represented by counsel. Thus this comment is more narrow than the comment on section 20(a)(3). Nonetheless, the court assumes that the Federal Reserve Board staff intended its comments to apply to all reaffirmation agreements entered into in bankruptcy cases.

Bankruptcy Code. Regulation Z does not attempt to cover these situations, because the court is in a position to determine the appropriate disclosures.

The tailoring of the required disclosures in the reaffirmation context is governed by the best interest of the debtor. The court finds that a reaffirmation agreement is much like a renewal of credit governed by Regulation Z, if the original credit was subject to this regulation. The purposes of the TILA fully apply to such reaffirmation agreements in bankruptcy. The court finds that the failure of creditors such as the bank in this case to provide meaningful disclosure of the applicable credit terms is a central problem for reaffirmation agreements under the Bankruptcy Code. Reaffirming debtors need the disclosures specified by the TILA and Regulation Z, to prevent the uninformed use of credit and to protect consumers from unfair credit practices.

■ Furthermore, the court finds that the best interest of a debtor wishing to reaffirm a debt initially subject to Regulation Z disclosure cannot be determined if the Regulation Z disclosures have not been made to the debtor and provided to the court in connection with the reaffirmation. Consequently, the court holds that a creditor seeking the reaffirmation of a debt must make the disclosures prescribed by Regulation Z, if such disclosures were required in the original extension of credit.[26] *Accord, In re Bruzzese,* 214 B.R. 444, 452 (Bankr.E.D.N.Y.1997).

■ Whether the creditor must provide the disclosures for open end credit or for closed end credit depends on the nature of the reaffirmation agreement. The nature of the previous credit giving rise to the debt to be reaffirmed does not control the choice of disclosures: the characterization of the debt is determined by the nature of the new debt created by the reaffirmation. If the reaffirmed debt is open end credit, the creditor must make the disclosures specified for such credit; if the reaffirmed credit is closed end credit (as is the usual case), the closed end credit disclosures must be made. In this case the reaffirmation agreement establishes open end credit. However, almost all of the Regulation Z disclosures for such credit are lacking.

Compliance with Regulation Z is not an onerous task for a creditor in the business of supplying credit, such as the bank in this case (and all commercial credit providers). The bank (and all commercial credit providers) is already required to make the Regulation Z disclosures to all of its consumer borrowers at the outset of a lending relationship. Such disclosure for a reaffirmation agreement can be provided by attaching the standard form used by the creditor for new credit transactions of the appropriate type (open end or closed end), and filling in the applicable information.[27]

The court holds that, where the underlying debt required Regulation Z disclosures, the court cannot determine whether a reaffirmation agreement is in the best interest of a debtor if the disclosures specified by Regulation Z have not been made in connection with the reaffirmation agreement.

### 3. Bank's Security Interest

■ A typical purpose of an allowable reaffirmation agreement is to permit a debtor to retain collateral that is subject to a valid security agreement. *See, e.g.,* COLLIER ON BANKRUPTCY ¶ 524.04 (Lawrence P. King ed., 15th ed.1997). The reaffirmation of a debt subject to a valid, nonavoidable security interest has a tangible benefit for a debtor. Absent reaffirmation, a security interest survives bankruptcy.[28] *Dewsnup v. Timm,* 502

---

26. If the original extension of credit was not covered by Regulation Z, and thus did not require the disclosures mandated by Regulation Z, such disclosures may not be required for the reaffirmation of such a debt.

27. This assumes that the standard form used by the creditor complies with Regulation Z. The court indulges this assumption with some hesitation, because the disclosure forms for many institutional creditors fall short of the regulatory requirements. The court has no knowledge whether the bank's standard disclosure form meets the requirements of Regulation Z, because the bank has made no effort to make the required disclosures.

28. The bankruptcy discharge terminates any personal liability of the debtor for the secured debt. After the end of the bankruptcy case and the termination of the automatic stay, the secured creditor's remedy is limited to going to state

U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (quoting H.R.Rep. No. 95–595, at 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected")); *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). Such a security interest would thus be enforceable by the secured creditor after the case is completed (and the automatic stay terminated). A reaffirmation agreement permits the debtor and the secured creditor to adjust their post-bankruptcy relationship as to this security interest. In contrast, the best interest of a debtor ordinarily requires the denial of a reaffirmation of an unsecured debt. 3 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 48.11 (2d ed.1994).

There is some indication in the reaffirmation agreement that the bank believes that it holds security for the debt here in question. The evidence supporting this possibility is the entry under "Security Description" on the reaffirmation form, which states: "CD Changer, FM. Modulators." Furthermore, on the motion for approval of the reaffirmation agreement, the last sentence of the first paragraph states: "Debtor believes the Reaffirmation Agreement is in his/her best interests because Essential."[29] Neither the debtor nor the bank has provided any other

evidence of any security for the debt to the bank.

### a. Validity of Bank's Security Interest

■ The bank has the burden of showing that it has a valid security interest in the goods here at issue. To show the validity of its security interest, it must provide copies of the underlying security agreement[30] and charge slips (if applicable), and any related documents. Furthermore, the court must be informed whether the debtor still has possession of the goods at issue.

California law, in the Unruh Act, specifies the conditions under which a creditor may obtain a security interest to secure payment of charges on a charge account.[31] The Unruh Act requires disclosure, before the first transaction on the card is made, of:

> [t]he conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended on the account, and a description or identification of the type of the interest or interests [to be taken].

CAL.CIV.CODE § 1810.1(f) (West 1997).

This provision is unusual for retail installment sales legislation. Typically such legislation makes no provision for security interests in consumer goods purchased on credit.

---

court to foreclose on the property. *Mayton v. Sears, Roebuck & Co. (In re Mayton),* 208 B.R. 61, 66 (9th Cir. BAP 1997).

**29.** The word "essential" is handwritten in the blank in the preprinted form.

**30.** The creditor must also show that the debtor has agreed to the underlying security agreement. For closed-end credit, the debtor usually has signed the applicable contract. For open-end credit, on the other hand, credit providers usually do not go to the trouble of obtaining the borrower's signature. This provides a problem of proving that the debtor has in fact agreed to the applicable document. On those rare occasions where a creditor has provided such a document to the court, the security agreement has often turned out to be the wrong agreement, because it was dated after the account was opened.

**31.** The California state law provisions on security interests in consumer credit transactions are not preempted by Regulation Z. Regulation Z has two preemption provisions that make state law

inapplicable to transactions covered by the Regulation. The statutory provisions of TILA governing truth in lending and Regulation Z thereunder preempt "state law requirements that are inconsistent with [their] requirements ... to the extent of the inconsistency." 12 C.F.R. § 226.28(a) (1997); *see also* 15 U.S.C.A. § 1610 (West 1998).

A special rule for credit cards preempts all state laws governing (a) applications or solicitations for such cards (governed by section 226.5a) and (b) certain features of renewal notices (governed by section 226.9(e)). 12 C.F.R. § 226.28(f); 15 U.S.C.A. § 1610(e) (West 1998). However, state laws relating to the enforcement of these disclosures are not preempted.

In contrast, the TILA and Regulation Z do not preempt state laws (except to the extent that they are inconsistent with federal law) on disclosures required at the time of issuance of a credit card (governed by section 226.6), or disclosures required in the periodic statement sent to the cardholder (governed by section 226.7).

Because section 1810(f) applies at the time of issuance of a credit card, and it is not inconsistent with the federally-mandated disclosures, it is not preempted by Regulation Z.

*See Sears, Roebuck & Co. v. Oszajca (In re Oszajca)*, 207 B.R. 41, 45–46 (2d Cir. BAP 1997), and cases and statutes cited therein. In most states, the validity of such a security interest is determined under that state's version of the Uniform Commercial Code. *See e.g., id.; In re Immerfall*, 216 B.R. 269, (Bankr.D.Minn.1998); *Carter v. W.S. Badcock Corp. (In re Carter)*, 180 B.R. 321, 324 (Bankr.M.D.Ga.1995); *In re Wiegert*, 145 B.R. 621, 622–23 (Bankr.D.Neb.1991); *In re Hardage*, 99 B.R. 738, 740–41 (Bankr. N.D.Tex.1989). In contrast, California has specific statutory provisions governing security interests in goods subject to retail charge agreements.

California Civil Code § 1799.100 regulates [32] security interests taken under section 1810.1(f). Section 1799.100 applies to any goods (as defined in the California version of the Uniform Commercial Code § 9–105(h)) "used or bought for use primarily for personal family or household purposes...." CAL. CIV.CODE § 1799.100(d)(1) (West 1997). Section 1799.100 is limited to items with a fair market value of less than $1000 each at the time that the security interest is created. *Id.*

Section 1799.100(c) provides that such a security interest may only be enforced by judicial action, unless the property is abandoned or freely and voluntarily surrendered by the consumer. *Id.* § 1799.100(c) (West 1997). Self-help repossession is prohibited by this subsection. Demand for the turnover of the property is also prohibited.

Subsection (e) specifies the consequences of violating the substantive provisions of section 1799.100 or 1810.1(f): "Any security interest taken in violation of [these provisions] is void and unenforceable." *Id.* § 1799.100(e). In addition, subsection (f) authorizes any person injured by a violation of

section 1799.100 to bring a civil action for the recovery of damages, equitable relief and attorney's fees and costs. *Id.* § 1799.100(f).

Because no evidence has been provided that the bank holds a valid security interest, on these grounds also the court cannot find that the reaffirmation agreement is in the best interest of the debtor.

**b. Extent of Security Interest**

█ In addition to showing the validity of its security interest, the bank must show the extent of its security interest. This requires that a secured creditor show the identity of the goods as to which it is claiming a security interest, and to show the value of these goods.

**1. Identity of Collateral**

To obtain a valid security interest for goods in the possession of the debtor, the debtor must have signed security agreement which contains an adequate description of the collateral. CAL.COM.CODE § 9203(a) (West 1997); *Carlos*, 215 B.R. at 59; *Bruzzese*, 214 B.R. at 452–53 (requiring a creditor claiming security to provide a description of each item sufficient to satisfy the requirements of specificity under Article 9 of the New York version of the Uniform Commercial Code). For credit card charges, this description (and the debtor's signature) is normally provided on the charge slip.[33]

Collateral must be described in one of two ways—by type or by item. *First City Bank v. Webb Co. (In re Softalk Pub. Co.)*, 64 B.R. 523, 525 (9th Cir. BAP 1986), *aff'd* 856 F.2d 1328 (9th Cir.1988); *Carlos*, 215 B.R. at 60. The sufficiency of a description of collateral turns on whether the description adequately describes the type of assets or the individual items. *See Carlos*, at 60; *In re Bradel*,

---

**32.** Section 1799.100 has its own substantive requirement, which provides:

> An agreement or other document creating a non-possessory security interest ∴. shall contain a statement of description reviewed and signed by the consumer indicating each specific item of the personal property in which the security interest is taken.

*Id.* § 1799.100(b) (West 1997). This substantive provision does not apply to credit cards, because section 1799.100(b) provides that compliance

with section 1810.1(f) is sufficient, and the requirements of section 1799.100(b) need not be met. *Id.*

**33.** Such a charge slip, even though it states that the creditor retains a security interest, does not meet the statutory requirement for a written security agreement. *Carlos*, 215 B.R. at 60. However, it may provide the elements of the signature and an adequate description of the collateral.

Bankr.No. 89 A. 1027, 1990 WL 86714 at *4 (Bankr.N.D.Ill.1990).

A description of assets by type is sufficient if it reasonably identifies what is described. *Greyhound Real Estate Fin. Co. v. Official Unsecured Creditors' Committee (In re Northview Corp.)*, 130 B.R. 543 (9th Cir. BAP 1991); *Carlos* at 60. Such a description is sufficient if the collateral is used exclusively for the described purpose or can only be classified as the type of collateral described. *Bradel*, at *4.

Individual items are sufficiently specified if the description meets a two-part test. First, if the collateral is such that the debtor may own other similar items (regardless of whether the debtor in fact has more than one), the description must enable a third party to distinguish the collateral from other property. *Carlos*, at 60; *Bradel* at *4. Alternatively, if the debtor is not likely to own more than one such item, a more general description is sufficient. *Carlos, id.; Bradel, id.*

A community standard applies in determining whether a debtor may own other similar items to those listed on a charge slip. *Carlos*, at 60. For consumer purchases, a person is likely to own more than one item of a particular type (such as a refrigerator, a baseball glove or a pair of socks) if an ordinary consumer in the community would have more than one item of this type. *Id.*

In this case neither party has provided to the court the charge slips that presumably have the description of the goods at issue. Thus the court cannot determine the adequacy of the description contained therein.

## 2. Value of Collateral

For a reaffirmation agreement, the property at issue is almost always well used, and usually in the condition that one finds for goods at a garage sale. *See e.g., Mayton v. Sears, Roebuck & Co.*, 208 B.R. 61, 66 (9th Cir. BAP 1997); *In re Hopkins*, 1997 WL 803718 (Bankr.W.D.Mich.1997) (camcorder costing $768.17, but worth only $172). The property's resale value is often *de minimis. Id.* Frequently the property is worn out altogether, and may have been discarded.

A bank's security interest in such goods extends only to the present market value of the goods at issue. *See* Bankruptcy Code § 506. The secured creditor must disclose to the debtor (and the court) the present condition of the goods at issue. In addition, the secured creditor must disclose the present market value of the goods, and how it has determined this value. The market value must be a realistic sales price in a viable market where the goods can reasonably be sold: usually this will be the garage sale or newspaper classified advertising market. Typically the debtor and the court will also need to know the date of purchase of the goods at issue (to determine their age), and the purchase price (excluding such charges as sales taxes, service contracts and extended warranties). A debtor must know this information in order to make an informed decision on whether to reaffirm the debt at issue, and the court must know it in order to determine whether a reaffirmation is in the best interest of a debtor.

The bank has provided no such statement of description signed by the debtor indicating each specific item in which it claims a security interest in this case, and it has provided no evidence whatever of the value of the alleged collateral. For this reason also the reaffirmation must be disapproved.

Furthermore, a debt reaffirmed in a reaffirmation agreement is not secured unless the description of the goods at issue in the reaffirmation agreement itself also complies with section 9203. If the description fails this test, the reaffirmed debt will be unsecured, even if the underlying debt was secured. In this case, it appears that CD changers and FM modulators may be sufficiently common that a consumer in Los Angeles is likely to have more than one. If this is not so, the bank has the burden of demonstrating this to the court. The bank has failed to carry this burden of proof. Thus the description of the goods in the reaffirmation agreement is not sufficient to provide a security interest in the goods at issue to secure the reaffirmed debt.

## c. History of Payments and Subsequent Charges

Where a creditor claims that its debt is supported by security, it is important to

know both (1) the history of payments that a creditor has received since the purchases at issue, and (2) any subsequent charges that the debtor has made.

The Unruh Act specifies how payments are to be applied to an account secured by more than one item of personal property. *See* CAL.CIV.CODE §§ 1808.3 (closed end credit); 1810.6 (open end credit) (West 1997). The court needs to see the record of payments to determine that the creditor has accurately determined which items continue to serve as collateral for the debt. In the court's experience, creditors often do not pay sufficient attention to this statutory requirement.

In addition to the history of payments, it is also important to know what subsequent charges the debtor has made, if the debt arises from an open end credit account. A running account of all purchases and payments after the purchase of an item in which a creditor claims a security interest is required, so that the debtor and the court can determine what property may continue to be subject to the creditor's security interest.

The bank has provided no such history of payments in this case. For this additional reason the court cannot find that the reaffirmation agreement is in the best interest of the debtor.

### 4. Bankruptcy Law Disclosures

In addition to the disclosure requirements under Regulation Z and the Unruh Act, there are several disclosures related to bankruptcy law that must be made for the court to determine that a reaffirmation is in the debtor's best interest.

The debtor needs to be informed of the options available if a creditor claims a security interest in goods for the purpose of which a reaffirmation is sought. *In re Bruzzese*, 214 B.R. 444, 453 (Bankr.E.D.N.Y. 1997). There are four options under Bankruptcy Code § 521. First, the debtor may redeem the property by paying its present fair market value in a lump sum. Second the debtor may surrender the property, and con-

vert any remaining debt into a fully unsecured debt. Third, the debtor may retain the property and make ongoing payments on a current basis. Finally, the debtor may reaffirm the debt. *Id.; Mayton v. Sears, Roebuck & Co.*, 208 B.R. 61, 64–68 (9th Cir. BAP 1997). The debtor needs to be informed of these alternatives, so that the debtor can make an intelligent, voluntary choice among them.

In addition, the debtor (and the court) need to know whether the security interest that the creditor claims is avoidable under Bankruptcy Code § 522. It is not in the debtor's best interest to reaffirm a debt on the grounds that the creditor is secured, if the debtor can avoid the security interest.

The court also needs to know whether a creditor claiming to be secured has in fact decided to pursue repossession of the collateral if the debt is not reaffirmed and the court finds the security interest to be valid. Creditors in this district have been scaring debtors into making reaffirmation agreements with the threat of repossession, even though in most cases the creditors have no intention of repossessing the property.[34] *Accord, In re Hovestadt*, 193 B.R. 382, 385 (Bankr.D.Mass.1996) (a reaffirmation agreement is "particularly egregious" if there is no threat that items purchased with a credit card will be repossessed). The court cannot find that the reaffirmation of an allegedly secured debt is in the best interest of the debtor if the creditor has no intention to repossess the property if the reaffirmation is disapproved.

### 5. Economic Consequences of Transaction

In addition to examining the voluntariness of the debtor's entry into the reaffirmation transaction and the quality of disclosure provided by the bank, the court must examine the economic consequences of the transaction to the debtor to determine her best interest.

---

**34.** Unless the property is voluntarily relinquished or abandoned, a secured creditor in California is permitted to repossess the property only by judi-

cial action. CAL.CIV.CODE § 1799.100(c) (West 1997). Such an action is usually more expensive than the property at issue is worth.

The economic consequences to the debtor of the reaffirmation agreement here at issue are dramatic. The debtor must pay $250.93 to obtain a credit line of $251 from the bank.[35] If she draws down the new credit line entirely, she will receive $251 in exchange for an obligation to pay $501.93 (the new $251 borrowing plus the $250.93 that would be discharged absent an effective reaffirmation), plus an unspecified amount of interest. While the court cannot calculate the exact interest rate because the underlying interest rate is not disclosed, it appears that the effective interest rate substantially exceeds 100%. *Cf. In re Hopkins,* 1997 WL 803718 (Bankr.W.D.Mich.1997); *In re Bruzzese,* 214 B.R. 444, 448–49 (Bankr.E.D.N.Y. 1997) (finding effective annual percentage rate of 93.84% for reaffirmed debt).

There are surely any number of credit card issuers operating in the consumer finance market who charge a far lower actual annual percentage rate for a $251 line of credit, even to persons who have received a recent discharge in bankruptcy. *Bruzzese,* 214 B.R. at 449. Alternatively, the debtor could open a savings account and make a deposit from her pay check each pay period, and have $251 in buying power much more quickly than she could pay an indebtedness approaching $600 pursuant to the reaffirmation agreement.

■ In addition, the debtor needs to provide the debtor's budget, including the debtor's net income and the debtor's monthly expenses, to show that the debtor can afford the expense of the reaffirmed debt. Ordinarily this information can be taken from Schedules I and J filed in the bankruptcy case. However, any changes in the information contained in the schedules should be provided to the court. In this case, Schedules I and J show that the debtor cannot afford to pay the debt here at issue.

■ Another economic consequence that the court needs to take into account is whether the debtor is reaffirming more than one debt. If so, the court needs to take into account the any other debts the reaffirmation of which may be approved. In this case this is not a factor, because no other reaffirmation applications appear in the debtor's case file.

For these reasons as well, the court cannot find that the reaffirmation agreement is in the best interest of the debtor.

## 5. Recommendation of National Bankruptcy Review Commission

■ The determination of the best interest of the debtor with respect to the proposed reaffirmation is also informed by the recommendation on reaffirmations recently made by the National Bankruptcy Review Commission.[36] The Commission's recommendations, in relevant part, are as follows:

11 U.S.C. § 524(c) should be amended to provide that a reaffirmation agreement is permitted, with court approval, only if the amount of the debt that the debtor seeks to reaffirm does not exceed the allowed secured claim, the lien is not avoidable under the provisions of title 11, no attorney fees, costs, or expenses have been added to the principal amount of the debt to be reaffirmed, the motion for approval of the agreement is accompanied by underlying contractual documents and all related security agreements or liens, together with evidence of their perfection, the debtor has provided all information requested in the motion for approval of the agreement, and the agreement conforms with all other requirements of subsection (c).

1 REPORT OF THE NATIONAL BANKRUPTCY REVIEW COMMISSION 3 (1997).

The court finds that an amendment to section 524(c) is not necessary to accomplish this recommendation. It can be adopted by case law interpreting the "best interest of the

---

**35.** In effect, the bank is only proposing to reopen the existing credit line, and to limit it to the amount of the reaffirmed debt. Under the agreement, the debtor would have an open end credit of $251.00, of which $250.93 is already exhausted.

**36.** The National Bankruptcy Review Commission delivered its recommendations to Congress on October 20, 1997.

debtor" standard already contained in section 524(c).[37] The court holds that a reaffirmation agreement is not in the best interest of the debtor if this recommendation is not satisfied.

In this case the proposed reaffirmation agreement meets none of the requirements of the Commission recommendation. Accordingly, the court finds on these grounds also that the reaffirmation is not in the best interest of the debtor.

## IV.  Conclusion

The court concludes that the reaffirmation agreement between the bank and the debtor on the credit card debt cannot be approved. The court bases this conclusion on procedural deficiencies, on the failure to make adequate disclosures supporting the bank's claim that it holds a security interest, on the lack of bankruptcy-related disclosures, on the failure to provide financial disclosures (including Regulation Z disclosures), and on the undue hardship that the agreement would impose on the debtor.

The court finds the following procedural deficiencies.  First, because the debtor failed to appear at the hearing the court was prevented from explaining to the debtor the legal effect and consequences of the reaffirmation agreement, or that the agreement is not required by any law or agreement.  Second, the debtor's nonappearance prevented the court from determining whether the agreement was induced by fraud.  Third, there is no evidence whether the debtor has rescinded the agreement within the period provided by the statute.  Fourth, the bank has failed to disclose to the debtor her right to redeem the property by paying its present value to the bank (if the bank holds a valid security interest in it), to surrender it to the bank, or to continue to make current payments on it.

The bank's failure to show that it holds an outstanding debt or a valid security interest, or to show the extent of such a security interest also prevents the approval of the reaffirmation agreement.  The bank has not shown that it is a creditor of the debtor at all, that it holds a valid security interest in any property of the debtor, that it has properly described property subject to such an agreement, the present value of such property, that the debtor is in possession of the property, that the bank plans to repossess the property if the debt is not reaffirmed, whether any security interest is avoidable under section 522, or whether the bank has received payments that may have discharged any such security interest.

Most notably, financial disclosures necessary to determine whether this reaffirmation is in the debtor's best interest are almost totally lacking.  Because the original credit in this case was subject to Regulation Z disclosures, the bank is required to make such disclosures in connection with the reaffirmation agreement, but has not done so.  In addition, the bank has failed to disclose to the debtor that the effective interest rate on this reaffirmed debt substantially exceeds 100%.

In consequence, the court holds that the debtor cannot make an informed decision on whether to reaffirm the debt, and the court cannot determine that such a reaffirmation is in the debtor's best interest.  Finally, the reaffirmation agreement imposes an undue hardship on the debtor, because she cannot afford the payments under the reaffirmation agreement.

For each of these reasons the reaffirmation agreement of the credit card debt is disapproved.

---

**37.**  Even if legislation is not necessary to adopt the recommendation of the National Bankruptcy Review Commission, such legislation is advisable.  While this court hereby adopts the proposal, other courts may not find that it is mandated by section 524(c).  Legislation would assure the uniform application of the rule in all cases nationwide.